LUIS R. MALDONADO ELÍAS, apelante, *v.* CARMELO GONZÁLEZ RIVERA, ALCAIDE, apelado.

*Número:* CE-86-97      *Resuelto:* 30 de enero de 1987

*Ivette Aponte Nogueras,* de la Sociedad para Asistencia Legal, abogada del apelante; *Rafael Ortiz Carrión, Procurador General, Vannessa Ramírez, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Luis R. Maldonado Elías presentó, el 22 de enero de 1986, una petición de hábeas corpus ante el Tribunal Superior, Sala de San Juan, para solicitar su libertad. En la vista celebrada el 12 de febrero de 1986 la defensa adujo que la encarcelación del peticionario el 9 de enero de 1986, cuando éste disfrutaba de libertad bajo palabra, fue ilegal y en violación al debido proceso de ley, toda vez que no se le celebró una vista ante la Junta de Libertad Bajo Palabra previo al arresto. Invocó los casos de *Morrissey* v. *Brewer,* 408 U.S. 471 (1972); *Gagnon* v. *Scarpelli,* 411 U.S. 778 (1973), y *Martínez Torres* v. *Amaro Pérez,* 116 D.P.R. 717 (1985). El tribunal de instancia declaró el mismo día de la vista, y en corte abierta, sin lugar el referido recurso. El 17 de marzo de 1986 se registró y notificó la sentencia escrita y se le fijó fianza en apelación. En la misma fecha la Junta revocó en forma final la orden de libertad bajo palabra.

En apoyo del recurso se sostiene que el procedimiento establecido en el Art. 5 de la ley para la revocación de este beneficio, 4 L.P.R.A. sec. 1505, no cumple las garantías mínimas que reconoce la cláusula constitucional del debido proceso de

ley y que la Junta erró al revocarle la libertad bajo palabra. (¹) El Procurador General ha comparecido. Resolvemos.

■ El Art. 5, *supra*, establece el procedimiento a seguirse para el arresto del liberado bajo palabra, al igual que provee para la revocación de este beneficio. El liberado podrá ser arrestado y recluido "previa investigación preliminar . . . que revele infracción de alguna condición de la libertad bajo palabra". Dentro de los sesenta días a partir del arresto del liberado "la Junta deberá . . . practicar una investigación y solicitar el informe de evaluación de la Administración de Corrección sobre la alegada violación a las condiciones de la libertad bajo palabra".

Además, la Junta tiene que notificar por escrito al liberado los hechos que se le imputan como causa para la revocación y darle la oportunidad de comparecer representado por abogado a exponer las razones por las cuales no deba revocársele el beneficio de la libertad bajo palabra. La notificación tiene que hacerse con por lo menos diez días de anticipación a la fecha señalada para la investigación, disponiéndose que:

> Si la Junta no celebrare la investigación dentro del término fijado en esta sección, el liberado será puesto en libertad inmediatamente, previa orden al efecto expedida por el Presidente de la Junta o por la persona que esté actuando por él. La alegada infracción a la libertad bajo palabra se considerará como no cometida si, transcurridos noventa (90) días desde la excarcelación del liberado, la Junta no celebra la investigación y revoca la libertad bajo palabra. 4 L.P.R.A. sec. 1505.

En el presente caso un examen del expediente ante la Junta demuestra que, para la revocación de la libertad bajo palabra al apelante, se dio cumplimiento a las disposiciones de ley. El 4 de noviembre de 1985 la Junta recibió la comuni-

---

(¹)Procesalmente sólo tenemos ante nos la apelación de la sentencia que denegó el auto de hábeas corpus.

cación escrita del oficial que supervisaba al apelante, mientras disfrutaba de libertad bajo palabra, que le imputaba el uso de sustancias controladas en violación de la condición Núm. 7 del Mandato de Libertad Bajo Palabra. Dos días más tarde la Junta ordenó el arresto del apelante. Se le notificó sobre el escrito, donde se le imputó haber violado una de las condiciones fijadas a su libertad dentro del término que dispone la ley y se le celebró la vista dentro del plazo reglamentario. Habiéndose probado la comisión de la violación imputada, la Junta efectuó la determinación de revocar al liberado el beneficio de libertad bajo palabra.

El arresto se produjo de conformidad con las disposiciones de ley que crean el procedimiento para el arresto y revocación de la libertad bajo palabra. El tribunal de instancia actuó correctamente al denegar la solicitud de hábeas corpus y resolver que no existía ilegalidad alguna en la detención del apelante.

Sin embargo, se queja el apelante de que la Junta ordenó su arresto sin que se le celebrase una vista inicial o preliminar([2]) antes de la fecha en que fue arrestado. Aduce que, por consiguiente, su encarcelación fue en violación al debido proceso de ley. Apoya su planteamiento en la opinión del caso *Morrissey* v. *Brewer*, supra.

---

[2] También se queja de que la vista final que se celebró fue una pro forma. La vista se celebró el 20 de febrero de 1986. El oficial examinador se negó a paralizar los procedimientos porque el liberado no renunció al término de sesenta días que fija el Art. 5 (4 L.P.R.A. sec. 1505). Surge de la transcripción de la referida vista, que ante la negativa a suspender, el abogado del apelante expresó lo siguiente:

"Antes que prosiga el Oficial Examinador, perdone que lo interrumpa, es que de ahora en adelante, el Oficial Examinador se dirigirá a la Oficial Sociopenal señorita Hernández, nosotros tomamos excepción de todos los procedimientos en el día de hoy aquí en esta vista y determinamos y solicitamos que la Junta declare esta vista como una vista pro-forma ya que no va a haber ningún tipo de defensa ninguna." T.E., pág. 9.

La referida oficial declaró que el liberado había abandonado el tratamiento de adicción a drogas y que había dado positivo al uso de cocaína y heroína. La defensa no interrogó ni cuestionó dicha prueba.

■ Ante la interrogante de qué tipo de procedimiento habrá de seguirse para salvaguardarle al convicto, que goza de libertad condicionada, las garantías constitucionales aplicables en la etapa postsentencia en el procedimiento de revocación de libertad bajo palabra, el Tribunal Supremo en *Morrissey* v. *Brewer*, supra, señala que las garantías mínimas son: (1) una vista preliminar[3] para determinar si hay causa probable para creer que el liberado ha violado las condiciones de la libertad bajo palabra, y (2) una vista final antes de la decisión definitiva sobre si la libertad bajo palabra será revocada. Véase *Martínez Torres* v. *Amaro Pérez*, supra, pág. 725.

En *Gagnon* v. *Scarpelli*, supra, el Tribunal Supremo resolvió a favor de los probandos al establecer que no existe diferencia alguna en cuanto al debido proceso de ley que debe ser garantizado en los procedimientos de revocación de libertad bajo palabra o de revocación de libertad a prueba.[4]

■ Sin embargo, el probando y el liberado bajo palabra tienen una libertad cualificada, ya que se les impone una serie de condiciones que el Estado entiende que son necesarias para lograr la total rehabilitación. Una vez en la libre comunidad esas personas comienzan a desarrollar toda una serie de acti-

---

[3] "What is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts. . . ." *Morrissey* v. *Brewer*, 408 U.S. 471, 484 (1972).

"(b) *The Revocation Hearing.* There must also be an opportunity for a hearing, *if it is desired by the parolee,* prior to the final decision on revocation by the parole authority." (Énfasis suplido.) *Morrissey* v. *Brewer*, supra, págs. 484 y 487–488.

[4] "Petitioner does not contend that there is any difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation, nor do we perceive one. Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty. Accordingly, we hold that a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey* v. *Brewer*, supra." (Escolios omitidos.) *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782 (1973).

vidades que son propias de aquellas personas que no tienen condicionada su libertad. Por esta razón, es que la persona tiene derecho a conservar su libertad mientras no viole las condiciones de la libertad bajo palabra y a que se le concedan unas garantías mínimas antes de la revocación de la libertad bajo palabra. En este contexto es que el Tribunal Supremo entiende que si una persona puede ser condenada o estar sujeta a una pérdida lastimosa o dolorosa de su libertad, el Estado debe concederle unas garantías procesales. (⁵)

No obstante, esas garantías procesales no tienen que equipararse totalmente con las que son ofrecidas a todo acusado en un encausamiento criminal, ya que el procedimiento de revocación de la libertad bajo palabra pertenece a una etapa posterior. (⁶) Otra razón, para esa distinción, es que el Estado tiene interés en la protección de la sociedad, en que una vez la persona viole las condiciones de la libertad bajo palabra pueda ser reingresada sin la pesada carga que se le impondría de tener que concederse todas las garantías procesales que cobijan a un acusado en un encausamiento criminal. Resultaría improcedente reconocer la totalidad de estas garantías procesales por la sencilla razón de que ya el Estado probó la culpabilidad de esa persona más allá de toda duda razonable cuando se celebró el juicio por los delitos por los cuales a la persona se le concede la libertad bajo palabra.

*Martínez Torres* v. *Amaro Pérez*, supra, configuró un procedimiento para la revocación de la sentencia suspen-

---

(⁵) "Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss'." *Morrissey* v. *Brewer,* supra, pág. 481.

(⁶) "We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. . . . Parole arises after the end of the criminal prosecution, including imposition of sentence." (Cita omitida.) *Morrissey* v. *Brewer,* supra, pág. 480. Véase, además, *Martínez Torres* v. *Amaro Pérez,* 116 D.P.R. 717 (1985).

dida o probatoria, (⁷) con arreglo a unas directrices que fijan el contenido mínimo de la garantía constitucional que salvaguarda el interés libertario del probando, cobijado por el manto del debido proceso de ley. (⁸)

---

(⁷)Adviértase que siendo idéntico el propósito de ambas leyes (libertad bajo palabra y probatoria), debe darse la misma interpretación a sus disposiciones correlativas. *Lebrón Pérez* v. *Alcaide, Cárcel de Distrito,* 91 D.P.R. 567, 573 (1964).

(⁸)A los fines de establecer el procedimiento a seguir en la revocación de la libertad a prueba, se adicionó un segundo párrafo al Art. 4 de la Ley Núm. 259 de 3 de abril de 1946, enmienda aprobada el 29 de mayo de 1986. Allí se recoge, esencialmente, lo establecido jurisprudencialmente en *Martínez Torres* v. *Amaro Pérez,* supra, págs. 727–730, de la siguiente forma:

"La corte sentenciadora podrá en cualquier momento en que a su juicio la libertad a prueba de una persona fuere incompatible con la debida seguridad de la comunidad o con el propósito de rehabilitación del delincuente, revocar dicha libertad y ordenar la reclusión de la persona por el período de tiempo completo señalado en la sentencia cuya ejecución suspendió para ordenar la libertad a prueba, sin abonarle a dicha persona el período de tiempo que estuvo en libertad a prueba. La corte sentenciadora podrá en cualquier momento solicitar de la Administración de Corrección un informe periódico de la conducta de la persona puesta a prueba.

"Si el Ministerio Fiscal interesa obtener la revocación de la libertad a prueba y por ende el arresto y encarcelación del probando el tribunal seguirá el siguiente procedimiento:

"(1) Celebrará a solicitud del ministerio fiscal, una vista *ex parte* inicial para evaluar si existe causa probable para creer que el probando ha violado las condiciones de la probatoria. La solicitud sobre revocación se hará ante cualquier magistrado del Tribunal de Primera Instancia o Juez Municipal, excepto al juez que hubiese sentenciado inicialmente al probando, quien al momento de recibirla determinará si ordena la detención inmediata del probando o lo cita para la vista sumaria inicial.

"La determinación discrecional del juez de arrestar o citar en esta etapa se fundará en un examen del oficial sociopenal y su informe en torno a la gravedad de las condiciones alegadamente incumplidas, el récord criminal previo, la conducta observada durante la probatoria y aquellas otras circunstancias pertinentes.

"(a) Si el juez opta por citar al probando y éste no comparece, se podrá ordenar su arresto de inmediato.

"(b) La orden de citación o arresto deberá incluir una relación de los procedimientos celebrados, notificar concisa y claramente las alegadas violaciones a las condiciones de la probatoria y en caso de arresto la fianza, si alguna impuesta.

"(c) El probando, si es arrestado, deberá ser llevado en el plazo más breve posible, ante la presencia de un magistrado para celebrarle la

■ El *arresto sumario* del convicto liberado no viola el debido procedimiento de ley como pretende el apelante. Ni *Morrissey* v. *Brewer, supra,* ni *Gagnon* v. *Scarpelli, supra,* como tampoco *Martínez Torres* v. *Amaro Pérez, supra,* resuelven que el debido procedimiento exige la celebración de una vista inicial *antes* de que pueda obtenerse una orden de arresto del convicto liberado. Lo que se exige es la celebración de una vista, prontamente, luego de su arresto y *antes* de que se tome la determinación *final* o concluyente de revocar el beneficio de libertad bajo palabra o probatoria.

---

vista sumaria inicial. En circunstancias normales este plazo no deberá exceder el término de setenta y dos (72) horas desde que fuere arrestado. En caso de que no pudiese prestar fianza, de habérsele impuesto, el juez ordenará su encarcelación.

"(2) Celebrará una vista sumaria inicial para determinar si procede la revocación provisional y encarcelamiento hasta la celebración de la vista final. El probando tendrá la oportunidad de ser oído y presentar prueba a su favor. Podrá a su vez confrontar al oficial sociopenal promovente y a los testigos adversos disponibles en esta etapa. El tribunal decidirá, caso a caso, la necesidad de mantener en el anonimato, por razón de seguridad personal, a las personas entrevistadas por el oficial sociopenal para fines de su informe. El peso de la prueba corresponderá al Ministerio Fiscal.

"La vista será de carácter informal y las Reglas de Evidencia sólo serán aplicables flexiblemente de modo que no desnaturalicen u obstaculicen el procedimiento. Las Reglas de Procedimiento Criminal regirán en la medida en que no sean incompatibles con la naturaleza sumaria e informal de la vista. El juez hará por escrito una relación sucinta de los procedimientos y de su decisión de la cual serán notificados el probando y el Ministerio Fiscal. El probando podrá estar asistido por abogado.

"Si se tratase de un probando, al cual se le imputa la comisión de un delito grave, que se encontrase disfrutando de libertad condicionada según se dispone en el Artículo 2A de la Ley 259 de 3 de abril de 1946, según enmendada, se celebrará la vista sumaria inicial de la forma y manera que aquí se provee, junto con la vista de determinación de causa probable del delito imputado de tal suerte que no se obstaculice la pronta y justa determinación de la misma. El tribunal podrá, en ese momento, revocar provisionalmente la libertad del probando.

"(3) Celebrará una vista final después de celebrada la vista sumaria inicial y determinada la revocación provisional y encarcelamiento. Salvo justa causa o acuerdo de las partes, con la anuencia del juez, la vista final sobre revocación deberá celebrarse dentro de un término que no exceda de treinta (30) días a partir de la celebración de la vista sumaria inicial.

■ Reiteramos que existe en Puerto Rico un procedimiento válido para la revocación de la libertad bajo palabra. 4 L.P.R.A. sec. 1501 y ss. Éste ha sido citado con aprobación en el caso *Martínez Torres* v. *Amaro Pérez*, supra, pág. 727 n. 6. Allí se mencionó que el mismo incluye ambas garantías constitucionales mínimas tales como notificación y vista. El trámite estatutario confiere a la Junta la facultad para ordenar la investigación preliminar, ordenar el arresto sumario y dilucidar finalmente en una vista el hecho de la violación a las condiciones fijadas en la orden que concedió la libertad, y luego decidir si dicha violación amerita revocar la orden anterior. Estos requisitos unidos a las salvaguardas establecidas en *Martínez Torres* v. *Amaro Pérez*, supra, protegen adecuadamente los derechos constitucionales de aquel que ha recibido los beneficios de la libertad bajo palabra.

■ La vista de revocación celebrada al apelante el 20 de febrero de 1986 se llevó a cabo dentro del plazo reglamentario

---

"(a) El probando tiene derecho a recibir notificación escrita previa con antelación suficiente de las alegadas violaciones a la probatoria, que le permita prepararse adecuadamente y estar representado por abogado. Sujeto a la protección de aquellos entrevistados a quienes se les garantizó anonimato por razón de seguridad, confrontará la prueba testifical en su contra y presentará prueba a su favor.

"(b) El peso de la prueba corresponde al Ministerio Fiscal. La decisión del juez, formulada a base de la preponderancia de la prueba, será por escrito y reflejará las determinaciones de hechos básicos, la prueba en que se basó y las razones que justifican la revocación. El probando y el Ministerio Fiscal serán notificados de dicha decisión.

"(c) El tribunal podrá consolidar ambas vistas si la vista inicial se suspendiera a petición o por causas atribuibles al probando, a solicitud de su abogado, o cuando el Ministerio Fiscal no solicite o no logre obtener el arresto y encarcelación del probando. En esta última circunstancia la vista final de revocación definitiva se señalará mediante notificación con no menos de treinta (30) días de antelación.

"(4) La vista sumaria inicial y la vista final deben dilucidarse ante distintos jueces, pero la vista final puede ser ventilada ante el mismo juez que sentenció originalmente al probando.

"(5) En todo procedimiento establecido en esta ley, deberá cumplirse con el debido proceso de ley." (Escolio omitido.) Ley Núm. 31 de 29 de mayo de 1986.

y se observó el procedimiento estatutario vigente en nuestra jurisdicción. (Véase nota al calce Núm. 2.) En esas circunstancias al apelante no se le vulneró el debido proceso de ley al revocarle la libertad bajo palabra. El apelante compareció a la vista final de revocación definitiva donde tuvo la oportunidad de hacer valer todos sus derechos. No tener la oportunidad de la vista inicial no es un error perjudicial. Véase *Martínez Torres* v. *Amaro Pérez*, supra, pág. 733 n. 9. El trámite posterior subsanó el alegado "error" procesal.

*Se confirmará la sentencia apelada y se ordenará la cancelación de la fianza y la encarcelación del apelante.*

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Hernández Denton emitió un voto particular. El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión escrita.

—O—

Voto particular emitido por el Juez Asociado Señor Hernández Denton.

Al votar a favor de la opinión del Tribunal, aprovecho la oportunidad para hacer unas expresiones adicionales en relación con el alcance de la doctrina del debido proceso de ley sobre la junta gubernamental, que tiene a su cargo la concesión y revocación de los beneficios de libertad bajo palabra.

I

La Constitución de Estados Unidos incorpora el concepto del debido proceso de ley en las Enmiendas Quinta y Decimocuarta, las cuales tienen su origen en la experiencia histórica americana de que los derechos fundamentales se pueden proteger y conservar solamente si hay alguna limitación a las actuaciones arbitrarias y caprichosas del Estado. El aspecto procesal del debido proceso establece los límites constitucio-

nales a las actuaciones gubernamentales y requiere que el ciudadano sea oído antes de que el Estado lo prive de su propiedad o libertad:

> El principio más antiguo del derecho administrativo es el que una parte no debe sufrir [una pérdida], en su persona o propiedad, sin una oportunidad de ser oída. . . . Pero el derecho a ser oído . . . es un derecho constitucional fundamental. . . . El significado literal de debido proceso de ley es un *proceso justo*. Esto significa que ninguna persona puede ser privada de su vida, libertad o propiedad sin una oportunidad de ser oída en defensa de sus derechos. (Traducción nuestra.) B. Schwartz, *Administrative Law,* Boston, Little, Brown & Co., 1985, Sec. 5.1, págs. 202-203.

Este requisito constitucional asegura y facilita la participación de la ciudadanía afectada en los procesos decisionales de las agencias administrativas. De esta manera se estimula a las agencias administrativas a reconocer y respetar la dignidad de la ciudadanía y se fortalece el sistema democrático. L. H. Tribe, *American Constitutional Law*, Nueva York, The Foundation Press, 1978, págs. 502–503. También obliga a las agencias a establecer unos procedimientos que permitan que, en la distribución de los beneficios y servicios gubernamentales, se observen en forma rigurosa las disposiciones de las leyes y se garantice un trato igual para todos los afectados. Al requerir la oportunidad de ser oído se logra aumentar la confiabilidad y la precisión de las decisiones cuasi adjudicativas. Véanse: Tribe, *op. cit.;* F. I. Michelman, *Formal and Associational Aims in Procedural Due Process,* en XVIII *Nomos: Due Process* 126 (1977); Nota, *Two Views of a Prisoner's Right to Due Process: Meachum v. Fano,* 12 Harv. C.R.-C.L. L. Rev. 405, 411–414 (1977).

En el derecho administrativo tradicional se requería una acción torticera del Gobierno contra la propiedad o los bienes de una persona mediando culpa o negligencia para que se afectara su interés propietario. R. B. Stewart, *The Reformation of American Administrative Law,* 88 Harv. L. Rev. 1669

(1975). Sin embargo, este modelo tradicional no proveía remedios para proteger a la ciudadanía cuando la actuación gubernamental consistía en la privación, suspensión o revocación de un beneficio o interés que no estaba protegido por el derecho consuetudinario (*common law*).

El cambio posterior en el enfoque jurídico en torno a los beneficios públicos tiene su origen histórico y sociológico en el Nuevo Trato (*New Deal*) del Presidente Roosevelt. Este programa socioeconómico y político cambió radicalmente las funciones gubernamentales. Luego, en la década de los sesenta, el Plan de la Guerra contra la Pobreza del Presidente Johnson aumentó dramáticamente la distribución de fondos federales mediante diversos programas de ayuda gubernamental a los ciudadanos.

Como resultado de estas modificaciones en las funciones del Gobierno, hubo un aumento vertiginoso en el número de personas que recibían beneficios o servicios gubernamentales y que estaban sujetas a diversas reglamentaciones del Estado, desde la licencia para guiar automóviles, hasta las exenciones contributivas y los cupones de alimentos. C. A. Reich, *Individual Rights and Social Welfare: The Emerging Legal Issues*, 74 Yale L.J. 1245, 1255–1256 (1965).

Estos cambios causaron la modificación de los conceptos tradicionales de interés protegido, permitiendo la ampliación de la protección del debido proceso y a su vez la eliminación de la dicotomía derechos *vs.* privilegios, para determinar qué intereses estaban protegidos por el debido proceso de ley. Su final comenzó a principios de la década del setenta con la decisión del Tribunal Supremo en *Golberg* v. *Kelly*, 397 U.S. 254 (1970). Allí se resolvió que antes de terminar unos beneficios gubernamentales es preciso brindarle una oportunidad al beneficiario para que defienda sus derechos. Después de *Goldberg* v. *Kelly*, supra, el Tribunal Supremo federal amplió el concepto de interés protegido para incluir otros beneficios y servicios públicos, *Board of Regents* v. *Roth*, 408 U.S. 564

(1972), y lo extendió a casos que envuelvan confinados, *Wolff v. McDonnell*, 418 U.S. 539 (1974) ; a las personas que disfrutaban de libertad bajo palabra, *Morrissey* v. *Brewer*, 408 U.S. 471 (1972), y a los beneficios de sentencia suspendida, *Gagnon* v. *Scarpelli*, 411 U.S. 778 (1973).

## II

La fuente en Puerto Rico del derecho constitucional al debido proceso de ley es el Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Vol. 1, pág. 275. En nuestra jurisdicción el desarrollo de la doctrina ha sido similar al de Estados Unidos. La distinción entre derechos y privilegios otorgados por el Estado también prevaleció en nuestro derecho administrativo hasta recientemente.

Aunque en *Las Monjas Racing Corp.* v. *Com. Hípica*, 67 D.P.R. 45 (1947), se utilizó el concepto de privilegio en el contexto de una licencia de jinete, desde *López* v. *Junta Planificación*, 80 D.P.R. 646 (1958), hemos ignorado la dicotomía tradicional entre privilegios y derecho, requiriendo que las agencias cumplan con el debido proceso de ley cuando se priva a un ciudadano de un beneficio o autorización del Estado. En *López* v. *Junta Planificación*, supra, se trataba de una "solicitud de autorización directa" para la construcción de un hotel y este Tribunal, a través del Juez Asociado Señor Lino J. Saldaña, determinó que "la Junta de Planificación ejerce poderes cuasi-judiciales al considerar y resolver una solicitud . . . . En consecuencia, tiene que celebrar una vista administrativa de carácter cuasi-judicial ajustándose a los requisitos del debido proceso de ley". Íd., pág. 667.

Posteriormente en *Lupiáñez* v. *Srio. de Instrucción*, 105 D.P.R. 696 (1977), reconocimos un interés propietario basado en una legítima expectativa de que el puesto que desempeñaba la demandante se convertiría en permanente. A pesar de que la persona envuelta lo único que tenía era un contrato por término fijo, este Tribunal ignoró la doctrina tradicional y

reconoció un interés propietario protegido por el debido proceso.

En *Pierson Muller I* v. *Feijoó*, 106 D.P.R. 838 (1978), se reconoció un interés propietario al empleo público, rechazando la doctrina tradicional de que el empleo público era un privilegio y que no estaba protegido por el debido proceso. En ese caso se utilizaron dos pruebas para determinar interés propietario: "si dicho interés está protegido por ley o cuando las circunstancias crean una expectativa de continuidad." Íd., pág. 852.

Luego en *Pagán Hernández* v. *U.P.R.*, 107 D.P.R. 720 (1978), se indicó que hay unos " 'nuevos derechos que en el Siglo XX forman parte fundamental del liberalismo democrático' ", íd., pág. 737 n. 8, y concluyó que para la determinación de una solicitud de readmisión a la Universidad de Puerto Rico, había que establecer un procedimiento que cumpliera con el *"due process* procesal". Íd., pág. 742.

Finalmente, en *Martínez Torres* v. *Amaro Pérez*, 116 D.P.R. 717, 723 (1985), reconocimos que "el simple vocablo 'privilegio' de antaño, ha transitado la locución compuesta 'privilegio-derecho', hacia la conceptualización de 'derecho limitado' ", y extendimos el alcance del debido proceso tanto a los probandos como a las personas que gozan del beneficio de libertad bajo palabra.

Paralelamente a la ampliación de los "nuevos derechos", "[h]emos resuelto que el debido proceso de ley no requiere que haya una vista previa a toda privación de un derecho o interés propietario. Cuando hay una privación temporal basta con que en algún momento significativo u oportuno el afectado tenga la oportunidad de defenderse y presentar su caso en un proceso con adecuadas garantías". *Vélez Ramírez* v. *Romero Barceló*, 112 D.P.R. 716, 730 (1982). En los últimos años la controversia jurídica en estos casos ha girado alrededor de qué tipo de oportunidad de ser oído es la más apropiada para permitirle al ciudadano proteger sus intereses. Con estos pro-

pósitos elaboramos unos factores para que las agencias y los tribunales determinen los procedimientos constitucionalmente aceptables. Ibíd., pág. 730.

La controversia en este caso nos permite extender estos principios generales a las personas que disfrutan de los beneficios de la libertad bajo palabra.

## III

En Puerto Rico el sistema de libertad bajo palabra está reglamentado por la Ley Núm. 118 de 22 de julio de 1974 (4 L.P.R.A. sec. 1501 *et seq.*). Mediante este sistema se permite que una persona que haya sido convicta y sentenciada a un término de cárcel cumpla la última parte de su sentencia fuera de la institución penal, sujeto al cumplimiento de las condiciones que se impongan para conceder la libertad. Este beneficio tiene el propósito principal de ayudar a los confinados a reintegrarse a la sociedad en forma positiva tan pronto estén capacitados, sin tener que estar encarcelados por todo el término de la sentencia impuesta.[1] 4 L.P.R.A. sec. 1503; J. W. Palmer, *Constitutional Rights of Prisoners*, 3ra ed., Cincinnati, Anderson Pub. Co., 1984, págs. 143–144; *Lebrón Pérez* v. *Alcaide, Cárcel de Distrito*, 91 D.P.R. 567, 570 (1964). Este objetivo está en armonía con el mandato que contiene nuestra Constitución en su Art. VI, Sec. 19, de que se deberá "reglamentar las instituciones penales para que sirvan sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". *Cf.* Exposición de Motivos de la Ley Núm. 31 de 29 de mayo de 1986.

Aun cuando la decisión de conceder o denegar los beneficios de libertad bajo palabra descansa en la entera discreción

---

[1] Este tipo de beneficio también sirve para aliviar los costos de mantener un alto número de confinados en las cárceles del país.

del Estado, y no existe un derecho a obtener tales beneficios, véanse: *Greenholtz* v. *Nebraska Penal Inmates*, 442 U.S. 1 (1979); *Emanuelli* v. *Tribl. de Distrito*, 74 D.P.R. 541, 549 (1953), el procedimiento para su concesión debe cumplir con ciertas salvaguardas procesales. Palmer, *op. cit.*, pág. 145. A tales efectos se deben publicar y tener disponibles a los confinados las guías o los criterios que se utilizan para conceder la libertad; debe existir algún tipo de vista o evaluación de la solicitud; de ordinario, el confinado debe tener acceso a la información que utiliza el organismo gubernamental para efectuar su decisión, y se le debe informar por escrito las razones por las cuales se le niega la libertad. Ibíd., pág. 149; *Parole Commission and Reorganization Act*, 18 U.S.C. secs. 4206–4208. *Cf.* 4 L.P.R.A. sec. 1503.

Una vez concedida la libertad bajo palabra, el confinado puede terminar de cumplir su sentencia fuera de la institución penal, siempre y cuando cumpla con las condiciones que se le impusieron al liberarlo. Al proveer un procedimiento para revocar el beneficio concedido, debemos ser conscientes de que la libertad que se va a revocar no es absoluta, sino limitada, sujeta a condiciones. Por tal razón, el confinado no tiene derecho a todas las garantías procesales que se exigen para un proceso criminal.

Sin embargo, aunque su libertad es condicionada, representa un interés de suficiente valor como para exigir una oportunidad de ser oído antes de su revocación. *Morrissey* v. *Brewer*, supra, págs. 482–484; Palmer, *op. cit.*, pág. 152. Así lo reconocimos en *Martínez Torres* v. *Amaro Pérez*, supra, pág. 725, al establecer las salvaguardas constitucionales para la revocación de esos "derechos limitados":

> Bajo este enfoque, las garantías mínimas que el debido proceso de ley exige al amparo de la *Constitución federal* para revocar los beneficios de *libertad bajo palabra* o sentencia suspendida son: (1) una *vista preliminar* para determinar si hay *causa probable* para creer que el probando ha vio-

lado las condiciones de su probatoria, y (2) una vista final antes de la decisión definitiva sobre si la probatoria será revocada. Advertimos, sin embargo, que no es necesario celebrar la primera vista (preliminar) cuando, durante el trámite de solicitud de revocación, no se arresta ni encarcela al probando. *Moody* v. *Daggett,* 429 U.S. 78, 86–87 (1976) ; *Petition of Medinger,* 539 P.2d 1185, 1190 (1975) ; *Pearson* v. *State,* 241 N.W.2d 490, 492–493 (1976). (Énfasis suplido.)

En dicha ocasión indicamos, además, que si la persona era arrestada se le debía celebrar la vista inicial en el plazo más breve posible, que en circunstancias normales no debería exceder de 72 horas. *Martínez Torres* v. *Amaro Pérez,* supra, pág. 728. Sin embargo advertimos, que no constituía un error perjudicial la omisión de la vista inicial cuando se ha tenido el beneficio de la vista final, y en ésta se determina revocar la libertad. Ibíd., pág. 733 n. 9.

Al requerirle al Estado que ofrezca a una persona una oportunidad de ser oído antes de revocar los beneficios, nos aseguramos de que no se actúe errónea y arbitrariamente. Mediante estas salvaguardas también se logra que la persona afectada acepte y respete la decisión. Palmer, *op. cit.,* pág. 152.

## IV

En el presente caso, mientras el apelante Luis R. Maldonado gozaba de los beneficios de libertad bajo palabra, se le imputó por su oficial supervisor, la violación de sus condiciones de libertad. Examinada una comunicación de dicho supervisor que informaba sobre el particular, la Junta ordenó el arresto del señor Maldonado, el cual se efectuó el *9 de enero de 1986.* Luego de la encarcelación no se celebró la vista inicial a que tenía derecho el apelante. Por tal razón, presentó una solicitud de hábeas corpus el *22 de enero de 1986,* en que reclamaba violación de sus derechos, al mantenérsele encarcelado sin la celebración de la referida vista preliminar.

En las anteriores circunstancias el planteamiento del apelante era meritorio y oportuno, pues tenía como parte del de-

bido proceso de ley, derecho a que se le celebrara una vista inicial inmediatamente después de su detención para que se determinara si existía causa probable para creer que había violado sus condiciones de libertad, *Martínez Torres* v. *Amaro Pérez*, supra, pág. 725. Su continua detención, sin efectuarse la vista, constituía una clara violación de sus derechos, por lo que el tribunal de instancia erró al denegar el hábeas corpus, o en la alternativa, al no ordenar la celebración *inmediata* de la vista. [2] N. P. Cohen y J. J. Gobert, *The Law of Probation and Parole*, Colorado, Ed. Shepard's McGraw-Hill, 1983, pág. 598.

Sin embargo, por razón de que *posteriormente* la Junta de Libertad Bajo Palabra celebró una "vista final" y determinó revocar los beneficios de libertad del señor Maldonado, en este caso su reclamo particular para la celebración de la vista inicial se ha convertido en académico. *Martínez Torres* v. *Amaro Pérez*, supra. En estas circunstancias, y para subsanar el error cometido, lo que procede es que el período que estuvo detenido sin la celebración de la vista se le acredite al tiempo que tiene que cumplir como resultado de la revocación de la libertad bajo palabra. Cohen y Gobert, *op. cit.*, pág. 598. [3]

Por último, es nuestra obligación advertirle a la Junta de Libertad Bajo Palabra que inmediatamente debe tomar las medidas necesarias para asegurar que en el futuro, antes de privar a alguien de sus beneficios de libertad, se celebre una vista inicial dentro de las setenta y dos horas de su detención y se incorporen las otras salvaguardas constitucionales establecidas en *Martínez Torres* v. *Amaro Pérez*, supra. Me preocupa que lo que ocurrió en este caso constituya una práctica administrativa y no una situación excepcional. Nos corres-

---

[2] La vista de revocación se efectuó finalmente el 20 de febrero de 1986, más de 40 días después de su detención.

[3] Aunque la legislación vigente no provee para este "beneficio", 4 L.P.R.A. sec. 1505, esto se debe a que parte de la premisa de que la detención inicial es legal.

ponde seguir muy de cerca los procedimientos establecidos por la Junta para asegurar su cumplimiento estricto con nuestras decisiones.