ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| OCTAVIO SALAS CORDERO<br><br>Recurrente<br><br>V.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrido | KLRA202400308 | Revisión Judicial procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: 146670<br><br>Sobre: Custodia Protectiva |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz, la jueza Mateu Meléndez y la jueza Prats Palerm

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de julio de 2024.

Comparece el señor Octavio Salas Cordero, en adelante el señor Salas o el recurrente, y solicita que revoquemos la *Resolución*, emitida y notificada el 14 de mayo de 2024. Mediante la misma, la Junta de Libertad Bajo Palabra, en adelante la recurrida o la JLBP, declaró no ha lugar la *Moción de Reconsideración* del recurrente y, por consiguiente, le negó el privilegio de libertad bajo palabra.

Por los fundamentos que expondremos a continuación, se confirma la determinación recurrida.

**-I-**

Surge del expediente que el señor Salas fue sentenciado por el delito de asesinato en primer grado, Art. 5.05(2c) de la *Ley de Armas*. La sentencia consolidada asciende a 111 años.[1]

---

[1] Apéndice del recurrente, pág. 9.

Número Identificador

SEN2024_____

Transcurridos varios trámites procesales que resulta innecesario pormenorizar para la resolución de la controversia ante nos, el recurrente presentó una *Moción Informativa para Consideración de Libertad Bajo Palabra*.[2] Alegó que existe un plan de salida estructurado y proveyó información detallada sobre la vivienda, la oferta de empleo y el amigo consejero. Así mismo, destacó que la solicitud de traslado a Georgia fue sometida nuevamente. En su opinión, "cumplió con someter toda la información que le corresponde… en relación con su Plan de Salida", por lo que le corresponde al Departamento de Corrección, en adelante DCR, y a la JLBP "mantenerse en comunicación para que esta agencia pueda recibir el informe final actualizado del Programa de Reciprocidad [del Pacto Interestatal con el estado de Georgia]". Enfatizó, además, que el estado de Georgia no requiere un amigo consejero y que así se lo confirmó la encargada de la Oficina de Reciprocidad del DCR, pero a pesar de esto, el señor Salas sometió un candidato.

Por su parte, la recurrida emitió una *Resolución*[3] en la que formuló las siguientes determinaciones de hechos:

1. Surge del expediente que el plan de salida propuesto por el peticionario en las áreas de oferta de empleo y candidato amigo consejero no han sido corroborados por el DCR. No contamos con planes de estudios o trabajo.

2. Surge del expediente que el peticionario posee una residencia en el estado de Georgia, USA emitida el 27 de marzo de 2024 corroborada por el Programa de Reciprocidad del DCR. No contamos con actitud de la comunidad.

---

[2] *Id.*, págs. 40-44.
[3] *Id.*, págs. 50-55.

3. El peticionario se encuentra clasificado en custodia de mínima seguridad desde el 16 de febrero de 2023.

4. Surge del expediente que el peticionario completó el taller de trastornos adictivos del DCR el 23 de abril de 2019.

5. El peticionario completó el Programa Aprendiendo A Vivir Sin Violencia del DCR el 12 de octubre de 2021.

6. El peticionario completó las terapias de Control de Impulsos del DCR el 9 de diciembre de 2020.

7. El peticionario posee la toma de muestra de ADN efectuada el 29 de mayo de 2012, conforme a la Ley 175-1995.

8. Surge del Informe Final de Ajuste y Progreso, realizado el 5 de octubre de 2021, por el personal designado por la Sección Programa de Evaluación y Asesoramiento (SPEA) del DCR, que existen factores de riesgos que no favorecen al peticionario entre ellos pobre introspección y renuente a admitir problemas.

9. Para efectos de un análisis de la totalidad del expediente la Junta evaluó la opinión de las víctimas inocentes, así como la naturaleza y circunstancias de los delitos que fueran de extrema violencia por los cuales cumple sentencia el peticionario.

10. La naturaleza y circunstancias de los delitos demuestran grave menosprecio a la vida humana.

11. En cuanto a la sentencia, el peticionario ha cumplido doce (12) años de los ciento once (111) años impuestos por el tribunal.[4]

Conforme a lo anterior, la JLBP coligió:

Surge del expediente que el peticionario presenta impulsividad ocasional y pobre introspección. Entendemos que el peticionario se beneficiaría de tratamientos dentro de la institución. Además, el informe de evaluación psicológica de SPEA hace constar los factores de riesgo. Dicha evaluación psicológica requiere seguimiento terapéutico individualizado y necesitaría supervisión interna y rigurosa de su Técnico Servicios Sociopenal (tss) si estuviera en la libre comunidad. Lo anterior refleja que el peticionario no ha demostrado introspección y falta de arrepentimiento genuino ante la gravedad del delito cometido para reinsertarse en la libre comunidad.

…El peticionario carece de una oferta de empleo y un candidato amigo consejero corroborados por el DCR. Por lo que, carece de un plan de salida viable en dos de sus áreas.

---

[4] *Id.*, págs. 50-51.

Para efectos de un análisis de la totalidad del expediente la Junta evaluó la opinión de las víctimas inocentes que, no es una positiva ni beneficiosa para el peticionario. Así como también evaluamos la naturaleza y circunstancias de extrema violencia de los delitos por los cuales cumple sentencia el peticionario. Las circunstancias del delito demuestran un grave menosprecio a la vida humana.[5]

En desacuerdo, el recurrente presentó una *Moción de Reconsideración*.[6] Arguyó, en síntesis, que la determinación de la JLBP es "arbitraria, irrazonable y no se fundamenta en los documentos que actualmente existen en el expediente del peticionario y en la prueba presentada". El señor Salas reiteró que cumple con todos los requisitos dispuestos en el Reglamento de la JLBP y que no se le puede penalizar porque el DCR no haya corroborado la oferta de empleo y el candidato amigo consejero. En su opinión, los únicos factores que tomó en consideración la JLBP para denegar su solicitud fueron: la opinión de las víctimas y la naturaleza del delito. Esto le resulta contradictorio porque al así proceder, la recurrida "ha delegado su deber ministerial de evaluar objetivamente la totalidad del expediente".

Examinada la solicitud de reconsideración del recurrente, la JLBP la declaró no ha lugar.[7]

Aun insatisfecho, el señor Salas comparece ante este foro y alega la comisión del siguiente error:

ABUSÓ DE SU DISCRECIÓN DE FORMA ILEGAL E IRRACIONAL LA JLBP AL DENEGAR EL PRIVILEGIO DE LIBERTAD PENALIZANDO AL RECURRENTE POR: 1-LA FALTA DE CORROBORACIÓN DEL DCR DE LA OFERTA DE EMPLEO, EL CANDIDATO A AMIGO CONSEJERO Y LA OPINIÓN DE LA COMUNIDAD DE GEORGIA (HOGAR PROPUESTO); 2-INTERPRETAR Y CITAR INADECUADAMENTE EL INFORME SICOLÓGICO DE 2021, OBVIAR LA CONSIDERACIÓN DE INFORMES POSTERIORES EMITIDOS

---

[5] *Id*., pág. 52.
[6] *Id*., págs. 56-75.
[7] *Id*., págs. 76-77.

POR EL DCR QUE EVIDENCIAN EL BUEN COMPORTAMIENTO, COMPROMISO CON LA REHABILITACIÓN DEMOSTRADO POR EL RECURRENTE CUANDO SE HA BENEFICIADO DE TODOS LOS PROGRAMAS PROVISTOS POR EL DCR, HA ESTUDIADO Y NO HA TENIDO NI UNA QUERELLA O INFORME NEGATIVO EN TODO SU TIEMPO ENCARCELADO DEMOSTRANDO LA JLBP SU PARCIALIDAD EN EL CASO CON UNA DETERMINACIÓN QUE NO ESTÁ FUNDAMENTADA EN EVIDENCIA SUSTANCIAL VIOLENTANDO EL DEBIDO PROCESO DE LEY.

Luego de revisar los escritos de las partes, la copia certificada del expediente administrativo y los documentos que obran en autos, estamos en posición de resolver.

-II-

A.

La revisión judicial de las decisiones administrativas tiene como fin primordial delimitar la discreción de las agencias, para asegurar que ejerzan sus funciones conforme la ley y de forma razonable.[8] Ahora bien, es norma reiterada "que los tribunales apelativos debemos conceder deferencia a las determinaciones de las agencias administrativas, por razón de la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado".[9] A esos efectos, la revisión judicial comprende tres aspectos, a saber: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hecho están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si se sostienen las conclusiones de derecho realizadas por la agencia.[10]

---

[8] *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114-115 (2023); *Fuentes Bonilla v. ELA et al.*, 200 DPR 364 (2018); *Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011).
[9] *Hernández Feliciano v. Mun. Quebradillas, supra*, pág. 114.
[10] *Hernández Feliciano v. Mun. Quebradillas, supra*, pág. 115; *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839-840

Por consiguiente, "quien impugne las determinaciones de hechos de una agencia tiene el deber ineludible de producir suficiente evidencia para derrotar la presunción de legalidad y corrección de la decisión administrativa".[11] En ausencia de evidencia sustancial, los foros apelativos estamos llamados a otorgar deferencia a las agencias administrativas.[12]

En lo aquí pertinente, la intervención judicial debe circunscribirse a determinar si las conclusiones de derecho del organismo administrativo son correctas.[13] Ahora bien, ello no significa que el tribunal revisor tiene facultad irrestricta para revisar las conclusiones de derecho del ente administrativo.[14] Al contrario, los tribunales deben concederle gran peso y deferencia a las interpretaciones que los organismos administrativos realizan de las leyes y reglamentos que administran, por lo que no pueden descartar libremente las conclusiones e interpretación de la agencia, sustituyendo el criterio de estas por el propio.[15] De este modo, si la interpretación de la ley o reglamento que realiza determinada agencia administrativa es razonable, aunque no sea la única razonable, los tribunales debemos concederle deferencia.[16] Más aún, los tribunales podrán sustituir el criterio de la

---

[11] *OEG v. Martínez Giraud*, 210 DPR 79, 118 (2022). (Opinión disidente emitida por el Juez Asociado Señor Colón Pérez, a la cual se une la Jueza Presidenta Oronoz Rodríguez).
[12] *Id.*, págs. 118-119.
[13] *OEG v. Martínez Giraud, supra*, pág. 89. Véase, además, *Torres Rivera v. Policía de PR*, 196 DPR 606, 627-628 (2016).
[14] *Hernández Feliciano v. Mun. Quebradillas, supra*, págs. 115-116; *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 216 (2012); *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009); *Rivera Concepción v. ARPe*, 152 DPR 116, 122 (2000).
[15] *Hernández Feliciano v. Mun. Quebradillas, supra,* pág. 114.
[16] *Torres Rivera v. Policía de PR, supra*, pág. 628.

agencia por el suyo únicamente cuando no encuentren una base racional para explicar la determinación administrativa.[17]

**B.**

La Ley Núm. 118 de 22 de julio de 1974, en adelante Ley Núm. 118-1974, según enmendada, creó la JLBP, adscrita al DCR.[18] Entre los poderes conferidos a la JLBP está decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico. También, se le confirió la facultad para revocar la libertad bajo palabra a cualquier liberado que revele no estar aún preparado para beneficiarse plenamente del privilegio y el tratamiento que implica la libertad bajo palabra.[19]

De esta forma, este organismo tiene la autoridad de conceder a cualquier persona recluida el privilegio de cumplir la última parte de su condena en libertad bajo palabra.[20] Al conceder el privilegio, la JLBP puede imponer las condiciones que estime necesarias.[21] Así, el liberado bajo palabra tiene una libertad cualificada.[22]

Conviene mencionar que, aunque la Ley Núm. 118-1974 fue objeto de enmiendas mediante la aprobación de la Ley Núm. 85-2022, los cambios a los criterios específicos que la JLBP debe considerar al momento de conceder el privilegio fueron mínimos. De modo que

---

[17] *Hernández Feliciano v. Mun. Quebradillas, supra,* pág. 116.
[18] 4 LPRA sec. 1501, *et seq.*
[19] Artículo 3 (a) y (b), 4 LPRA sec. 1503.
[20] *Benítez Nieves v. ELA et al.,* 202 DPR 818 (2019).
[21] Art. 3, Ley Núm. 118-1974, *supra*, 4 LPRA sec. 1503.
[22] *Benítez Nieves v. ELA et al., supra; Maldonado Elías v. González Rivera,* 118 DPR 260, 266 (1987).

prevalecen los criterios dispuestos en la Ley Núm. 118-1974, a saber:

> (1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.

> (2) Las veces que el confinado haya sido convicto y sentenciado.

> (3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.

> (4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.

> (5) El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.

> (6) La edad del confinado.

> (7) El o los tratamientos para condiciones de salud que reciba el confinado.

> (8) La opinión de la víctima.

> (9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.

> (10) Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.

> (11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento.

> La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho.[23]

Además, hay que destacar, que conforme el Artículo 5 de la Ley Núm. 118-1974, *supra*, la JLBP tiene la autoridad de promulgar las reglas y reglamentos que crea convenientes para el mejor cumplimiento de las disposiciones de ese artículo.[24] En virtud de ello, la agencia aprobó el *Reglamento de la Junta de Libertad Bajo Palabra*, en adelante Reglamento Núm. 9232.

---

[23] Art. 3-D de la Ley Núm. 118-1974 (4 LPRA sec. 1503d). Véase, además, Exposición de Motivos de la Ley Núm. 85-2022.
[24] *Benítez Nieves v. ELA et al.*, *supra*.

En lo pertinente, el Artículo X, Sección 10.1 del Reglamento Núm. 9232 establece los siguientes criterios de elegibilidad:

A. La Junta evaluará las solicitudes del privilegio, caso a caso, conforme al grado de rehabilitación y ajuste que presente el peticionario durante el término que ha estado en reclusión.

B. Al evaluar los casos, la Junta tomará en consideración los siguientes criterios con relación al peticionario:

   1. Historial delictivo.

      a. La totalidad del expediente penal.

      b. Los antecedentes penales. Se entenderá por antecedentes penales las veces que un peticionario haya sido convicto y sentenciado.

      c. […]

      d. Naturaleza y circunstancias del delito, por el cual cumple sentencia, incluyendo el grado de fuerza o violencia utilizado en la comisión del delito.

      […]

   2. Una relación de liquidación de la(s) sentencia(s) que cumple el peticionario.

   3. La clasificación de custodia, el tiempo que lleva en dicha clasificación y si hubo cambio de clasificación y las razones para ello.

      a. La Junta no concederá libertad bajo palabra cuando el peticionario se encuentre en custodia máxima.

   4. La edad del peticionario.

   5. La opinión de la víctima.

      a. La opinión de la víctima constituye un factor a ser considerado por la Junta, pero la determinación sobre el grado de rehabilitación de un peticionario y si está capacitado para continuar

cumpliendo su sentencia en la libre comunidad es prerrogativa de la Junta.

6. El historial social.

    a. Se tomará en consideración la totalidad del expediente social.

    b. […]

    c. El historial de ajuste institucional y el historial social preparado por el Departamento de Corrección y Rehabilitación.

    d. Si se le han impuesto medidas disciplinarias, disponiéndose que no se tomarán en consideración aquellas medidas disciplinarias en las cuales ha transcurrido un (1) año desde la fecha en que se impuso dicha medida disciplinaria.

    e. El historial de trabajo y/o estudio realizado en la institución.

    […]

7. Si cuenta con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia y amigo consejero.

    a. El plan de salida podrá ser en Puerto Rico, en cualquier estado de los Estados Unidos o en cualquier otro país que tenga un tratado de reciprocidad con Estados Unidos.

    b. Cuando el plan de salida propuesto sea fuera de la jurisdicción del Gobierno de Puerto Rico:

        i. El peticionario proveerá la dirección física del lugar donde propone residir, de concederle la libertad bajo palabra, el nombre y número de teléfono, correo electrónico de la persona con la cual residirá y su relación con el peticionario.

        ii. La solicitud será tramitada por el Programa de Reciprocidad del Departamento

de Corrección y Rehabilitación al Estado receptor para que éste proceda a investigar la información provista por el peticionario.

iii. No se aceptará un plan de salida fuera de la jurisdicción de Puerto Rico, hasta tanto no se presente la carta de aceptación del Programa de Reciprocidad.

[…]

c. Oferta de empleo y/o estudio.

i. Todo peticionario deberá proveer una oferta de empleo o, en la alternativa, un plan de estudios adiestramiento vocacional o estudio y trabajo.

ii. La oferta de empleo se presentará mediante carta suscrita por la persona que extiende la oferta de empleo al peticionario, incluyendo la siguiente información:

a. Nombre completo, dirección postal, física, electrónica y teléfono(s) de la persona que ofrece el empleo.
[…]

iii. […]

iv. La falta de oferta de empleo o de estudio no será razón suficiente para denegar el privilegio.

[…]

En cuanto a la concesión o denegatoria del privilegio, la Sección 12.3(B) del Reglamento Núm. 9232 dispone que, "[c]uando la Junta deniegue la libertad bajo palabra, expresará individualmente en su resolución las determinaciones de hecho y conclusiones

de derecho que fundamentan dicha determinación, así como indicará la fecha (mes y año) en que volverá a considerar el caso".

Aun cuando la decisión de conceder o denegar los beneficios de libertad bajo palabra descansa en la entera discreción del Estado, y no existe un derecho a obtener tales beneficios, el procedimiento para su concesión debe cumplir con ciertas salvaguardas procesales.[25]

**-III-**

Para el recurrente, en lugar de exigir al DCR el cumplimiento de su deber ministerial, la JLBP optó por responsabilizarlo y penalizarlo "por el incumplimiento de una agencia con los deberes y responsabilidades que la ley y el ordenamiento le exige". En su opinión, el DCR faltó a sus deberes ministeriales al no corroborar la oferta de empleo y al candidato amigo consejero. Así pues, insiste que presentó toda la documentación, según requiere el Reglamento Núm. 9232. También, aduce que, bajo el Programa de Reciprocidad, la residencia propuesta y el familiar con quien residirá en Georgia fueron aceptados. El señor Salas colige que "el plan de salida fue debidamente investigado, evaluado y aceptado por el estado de Georgia de conformidad a las reglas que gobiernan y regulan el pacto interestatal". Del mismo modo, enfatiza que en la totalidad del expediente son más los factores a favor de la libertad bajo palabra, que los factores de riesgo a los que alude la recurrida, a saber: (1) el peticionario no cuenta con casos ante los tribunales, denuncias o

---

[25] *Maldonado Elías v. González Rivera*, *supra*, págs. 275-276.

querellas institucionales pendientes; (2) se encuentra clasificado en custodia mínima; (3) presenta un plan de salida estructurado en el área de residencia, presentó una oferta de empleo y un candidato a amigo consejero; (4) completó trastornos adictivos; (5) completó el Programa Aprendiendo a Vivir sin Violencia; (6) completó las terapias de Control de Impulsos; (7) posee la toma de muestra de ADN; (8) posee carta de aceptación al estado de Georgia; y (9) no ha incurrido en querellas. Además, alega, que contrario a la decisión de la JLBP, del expediente surge que el recurrente admite el delito y demuestra arrepentimiento.

En síntesis, dado que el recurrente satisface sustancialmente los requisitos para disfrutar de libertad bajo palabra, arguye que su denegatoria demuestra "claramente la parcialidad que la JLBP tiene en este caso".

Por su parte, la recurrida arguye que la determinación recurrida es correcta en derecho. Ello es así, porque surge de la totalidad del expediente administrativo que el recurrente incumplió con varios de los criterios que establece tanto la Ley Núm. 118-1974 como el Reglamento Núm. 9232, para conceder el privilegio de libertad bajo palabra. Esto es determinante, ya que contrario a lo que intima el recurrente, el que su plan de salida sea fuera de la jurisdicción del Estado Libre Asociado de Puerto Rico, no le exime del cumplimiento de las leyes y reglamentos de este último.

Luego de revisar cuidadosamente la copia certificada del expediente administrativo, concluimos que las determinaciones de hechos de la JLBP están basadas en el expediente. Del mismo modo, la interpretación que hace la recurrida de la Ley Núm. 118-1974 y del Reglamento Núm. 9232 nos parece razonable. Así pues, determinamos que el recurrente no derrotó la presunción de corrección de la resolución impugnada.

**-IV-**

Por los fundamentos previamente expuestos, se confirma la determinación recurrida.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones