ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| CHRISTIAN V. TORRES COLÓN<br><br>Recurrente<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrida | KLRA202400135 | *Revisión Administrativa* procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm.: 146049<br><br>Sobre: No Concesión del Privilegio de Libertad Bajo Palabra |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de mayo de 2024.

Comparece Christian V. Torres Colón, miembro de la población correccional de Ponce Principal (en adelante, señor Torres Colón o recurrente), mediante un recurso de revisión judicial, para solicitarnos la revisión de la *Resolución* emitida el 8 de enero de 2024, y notificada el 11 de enero de 2024, por la Junta de Libertad Bajo Palabra (en adelante, JLBP o recurrida).[1] Mediante la *Resolución* recurrida, la JLBP no concedió al señor Torres Colón el privilegio de libertad bajo palabra. En consecuencia, determinó volver a considerar la solicitud en diciembre de 2024.

Por los fundamentos que expondremos, se *confirma* la *Resolución* recurrida.

I

Conforme se desprende de los autos, el señor Torres Colón se encuentra actualmente ingresado en la Institución Correccional Ponce Principal, cumpliendo una sentencia de reclusión por el

---

[1] Apéndice del recurso, a las págs. 1-5.

Número Identificador

SEN2024_____

término de trece (13) años por infracción a la Ley de Armas y Sustancias Controladas.[2] Su fecha de máximo de sentencia está pautada tentativamente para el 4 de abril de 2027.[3]

En lo pertinente, la JLBP adquirió jurisdicción para considerar al recurrente para el disfrute del privilegio de libertad bajo palabra el 21 de noviembre de 2020.[4] Según surge del apéndice del recurso, el caso fue evaluado el 4 de octubre de 2023, debido una *Resolución* previa,[5] emitida por la JLBP, en la cual dispuso que se consideraría nuevamente el caso para el mes de diciembre de 2023, fecha para la cual requirió un Informe de Ajuste y Progreso actualizado, el plan de salida corroborado por el Negociado de Comunidad del Departamento de Corrección y Rehabilitación (DCR), certificación de extinción de sentencia federal, certificación de cursos y talleres completados, así como también charlas y terapias finalizadas.[6]

Conforme ordenado, el 7 de noviembre de 2023, el DCR presentó el *Informe de ajuste y progreso a la Junta de Libertad Bajo Palabra.*[7]

En la misma fecha, la JLBP presentó su *Informe breve libertad bajo palabra.*[8] En esencia, dicho *Informe* indicó que el recurrente propuso residir en el hogar de su hermana, la Sra. Edith Torres Colón, ubicado en el barrio Vadi, Calle Eduardo Riera #57, Mayagüez, P.R. Enfatizó, que la residencia se encontraba en buenas condiciones y que su hermana estaba de acuerdo en que se le concediera la libertad bajo palabra y, lo dejasen vivir en su residencia. De otra parte, el *Informe* señaló que el ambiente en la comunidad era descrito como uno de alta mediana incidencia

---

[2] Véase expediente administrativo, a las págs. 226-229.
[3] Apéndice del recurso, a las págs. 15-20.
[4] Véase expediente administrativo, a las págs. 12-16.
[5] *Id.*
[6] *Id.*, a las págs. 31-34.
[7] *Id.*, a las págs. 38-39. *Véase*, expediente administrativo, a las págs. 72-74.
[8] Véase expediente administrativo, a las págs. 83-86.

criminal, toda vez que colindaba con el Residencial Roosevelt, el cual era uno de los residenciales de mayor incidencia criminal en el área. Respecto a la actitud de la comunidad, los vecinos que fueron entrevistados expresaron que el señor Torres Colón era una persona tranquila. No obstante, varios vecinos de la comunidad lo relacionaron a uso y ventas de drogas en el pasado. Únicamente, un vecino expresó su oposición al disfrute del privilegio solicitado, dado que consideraba que el vecindario no era un lugar idóneo para el inicio de la rehabilitación del recurrente. Por último, el *Informe*, reflejó que el recurrente sometió una oferta de empleo en la compañía *HA Painting and More* y, presentó a su amigo consejero, el Sr. Israel Espinoza (señor Espinoza), quien era pastor de la Iglesia MI Parcelas Castillo en Mayagüez. El señor Espinoza compareció para entrevista e indicó que el recurrente era feligrés de su iglesia y, que era su deseo ayudarlo.

Consecuentemente, el 29 de diciembre de 2023, el Oficial Examinador, Víctor G. Colón Cintrón, rindió el *Informe de Oficial Examinador* (Informe), en el cual determinó no conceder el privilegio de libertad bajo palabra al señor Torres Colón. Asimismo, concluyó que el caso podría volver a considerarse para el mes de diciembre de 2024, fecha para la cual requirió el Informe actualizado de *Ajuste y Progreso*, el plan de salida corroborado por el Negociado de Comunidad del DCR, certificación de cursos, talleres completados, así como también charlas y terapias finalizadas.[9] Además, emitió las siguientes determinaciones de hechos:

1. El peticionario se encuentra actualmente clasificado en custodia mediana desde el 16 de marzo de 2021. La custodia mediana fue ratificada el 10 de marzo de 2023. Del expediente surge que la escala de reclasificación de custodia casos sentenciados arroja puntuación de dos (2) en los renglones del 1 al 8 y con órdenes de detención recomienda custodia mediana la cual acoge el Comité de Clasificación y Tratamiento.

---

[9] Apéndice del recurso, a las págs. 40-42.

2. Del expediente no surge que el peticionario se haya beneficiado de programas de tratamiento para la adicción a drogas y/o alcoholismo.

3. Del expediente surge que el peticionario cuenta con apoyo familiar. No obstante, la comunidad y la ubicación del hogar propuesto en su plan de salida no resultan viable para la rehabilitación del peticionario.

4. Del expediente surge que el peticionario cuenta con amigo y consejero y empleo corroborados.[10]

Por lo anterior, el Oficial Examinador concluyó que el recurrente no cualificaba para beneficiarse del privilegio de libertad bajo palabra.[11]

En vista de lo anterior, el 8 de enero de 2024, notificada el 11 de enero de 2024, la JLBP emitió la *Resolución* recurrida.[12] En dicha *Resolución*, la JLBP acogió el *Informe del Oficial Examinador*.

Insatisfecho con lo allí resuelto, el 31 de enero de 2024, el señor Torres Colón presentó una *Moción solicitando reconsideración: solicitud de libertad bajo palabra condicionado a lock down y condición especial de tratamiento de sustancias controladas como dispone sentencia federal en supervised released* en la cual reiteró que la JLBP incumplió con su obligación de considerar la totalidad del expediente administrativo. A su vez, enfatizó que contaba con un hogar viable.[13] Por lo anterior, solicitó se reconsiderase la determinación de la JLBP. Por su parte, la JLBP no atendió la moción de reconsideración.

Así las cosas, el 15 de marzo de 2024, el recurrente presentó un recurso de revisión ante este Tribunal, en el cual esgrimió la comisión de los siguientes errores:

Primer Error:

Erró la Junta al denegar la lbp del recurrente, basándose en un Informes Para Posible LBP, FE1I de 3 de septiembre de 2021 y un Ajuste y Progreso rendido el 7 de noviembre de 2023 y determinar que no se

---

[10] Apéndice del recurso, a la pág. 40-42.
[11] *Id.*, a la pág. 41.
[12] *Id.*, a las págs. 1-5.
[13] *Id.*, a las págs. 6-13.

beneficio de programas de tratamiento para adicción a drogas y/o alcoholismo y le requirió certificación de cursos, talleres completados, así como terapias finalizadas, negándose a solicitarlos a la Coordinadora de Confinados en Prisiones Federales y a atender la Moción de Reconsideración con la cual se unieron Inmate Education Data y Program Review de los cuales surgen cursos educativos, deportivos, terapias y tratamientos que demostraron un adelanto sustancial en su rehabilitación y cumplir satisfactoriamente con su plan institucional que son parte de la totalidad del expediente, por lo que la Junta no hizo un análisis ponderado de toda la documentación que obra en su expediente administrativo, documentos, informes evaluaciones y los testimonios, no existiendo evidencia sustancial que la sostenga y la misma fue arbitraria ilegal e irrazonable y procede su revocación por ser contraria a derecho.

Segundo Error:

Erró la Junta al emitir una Resolución que determinó que el hogar propuesto por la ubicación no resulta viable para su proceso de rehabilitación negándose a considerar que la familia lo acepta, la comunidad no se opone y el recurrente estuvo un año y medio en supervisión electrónica con su hermana, Edith Colón desde 5 de agosto de 2015 hasta que fue sentenciado el 16 de mayo de 2017 y cumplió todas las condiciones impuestas por OSAC por un (1) año con diez (10) meses y su ajuste en dicho hogar, ello consistente con el Informe de Libertad Bajo Palabra rendido por el DCR, lo que constituyó un error de derecho y un claro abuso de discreción que amerita la revocación.

Tercer Error:

Erró la Junta al denegar al recurrente su lbp fundamentándose en que se encuentra clasificado en custodia mediana lo que constituye un craso error de derecho y procede su revocación.

Cuarto Error:

Erró la Junta al rechazar de plano la Moción de Reconsideración radicada por el Recurrente no expresando conclusiones de hecho ni fundamentos de derecho, lo que lo que constituyó un error de derecho y un claro abuso de discreción que amerita revocación.

A raíz del requerimiento emitido por este Tribunal, el DCR presentó copia certificada del expediente administrativo. Por otro lado, mediante *Resolución* emitida el 18 de marzo de 2024, concedimos al DCR por conducto de la Oficina del Procurador General hasta el 15 de abril de 2024, para exponer su posición en cuanto al recurso. El 15 de abril de 2024, el DCR por conducto de

la Oficina del Procurador General presentó *Escrito en cumplimiento de Resolución.* Contando con el beneficio de ambas partes, procederemos a exponer el derecho aplicable.

II

**A. Revisión Judicial**

El artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[14] otorga la competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[15] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme la ley y de forma razonable.[16] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados y si son compatibles con la política pública que las origina.[17] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y, (iii) la revisión completa de las conclusiones de derecho.[18]

Dentro de este marco, nuestro Tribunal Supremo ha reiterado que los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[19] Por un lado, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio

---

[14] Ley Núm. 201-2003 (4 LPRA sec. 24y(c)).

[15] *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014).

[16] *Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011); *Empresas Ferré v. A.R.Pe.*, 172 DPR 254, 264 (2007).

[17] *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018).

[18] *Batista, Nobre v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II,* 179 DPR 923, 940 (2010); *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279-280 (1999).

[19] *Rolón Martínez v. Caldero López, supra. Asoc. Fcias. v. Caribe Specialty et al. II.*, supra*,* 940.

de razonabilidad y deferencia, no alterarán las determinaciones de hechos de las agencias, siempre que surja del expediente administrativo evidencia sustancial que las sustente.[20]

Igualmente, las determinaciones de los entes administrativos tienen una presunción de legalidad y corrección que los tribunales deben respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas.[21] A la luz de esto, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[22] Ahora bien, esta deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[23]

El Tribunal Supremo ha establecido que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad.[24] La evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[25] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la

---

[20] *Rolón Martínez v. Caldero López*, supra; *Asoc. Fcias. v. Caribe Specialty et al. II.*, supra, 940.

[21] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

[22] *Id.*

[23] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012), citando a Empresas Ferrer v. A.R.Pe., supra.

[24] *Batista, Nobre v. Jta. Directores,* supra, 216, citando a *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 511-512 (2011); *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999).

[25] *Id. Otero v. Toyota*, 163 DPR 716, 728 (2005).

agencia le haya conferido.[26] Ello implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[27] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos y no los tribunales.[28]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[29] Para ello, deberá demostrar que existe otra prueba en el expediente, que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[30]

Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho y no sustituirá el criterio de la agencia por el suyo.[31] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[32] De esta manera, los tribunales, al realizar su función revisora, están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra.[33] Así pues, si el punto de derecho no conlleva

---

[26] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997).
[27] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).
[28] *OCS v. Triple-S*, 191 DPR 536, 554 (2014); Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.
[29] *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).
[30] *Gutiérrez Vázquez v. Hernández*, 172 DPR 232, 245 (2007).
[31] *Otero v. Toyota*, supra.
[32] *García Reyes v. Cruz Auto corp.*, supra, 894.
[33] *Asoc. Vec. de H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).

interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable sin limitación.[34]

Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente.[35] Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de intervenir.[36]

## B. Ley de la Junta de Libertad Bajo Palabra

La Junta de Libertad Bajo Palabra es regulada por la Ley Núm. 118-1974.[37] El sistema de libertad bajo palabra permite que una persona que haya sido convicta y sentenciada a un término de cárcel cumpla la última parte de su sentencia fuera de la institución penal, sujeto al cumplimiento de las condiciones que se impongan para conceder la libertad.[38] A tales efectos, tiene el propósito principal de ayudar a las personas confinadas a reintegrarse a la sociedad en forma positiva tan pronto estén capacitados, sin tener que estar encarcelados por todo el término de la sentencia impuesta.[39]

> [...] La libertad bajo palabra será decretada para el mejor interés de la sociedad y cuando las circunstancias presentes permitan a la Junta creer, con razonable certeza que tal medida habrá de ayudar a la rehabilitación del delincuente. Para determinar si concede o no la libertad bajo palabra, la Junta tendrá ante sí toda la información posible sobre el historial social, médico, ocupacional y delictivo de cada confinado, incluyendo la actitud de la comunidad respecto a la liberación condicional del sujeto, y una evaluación que deberá someter la Administración de Corrección.[40]

---

[34] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).
[35] *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007); *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012).
[36] *Cruz v. Administración*, 164 DPR 341, 357 (2005).
[37] Ley de la Junta de Libertad Bajo Palabra, Ley Núm. 118 de 22 de Julio de 1974, según enmendada, 4 LPRA sec. 1501, *et seq.*
[38] *Maldonado Elías v. González Rivera*, 118 DPR 260, 275 (1987).
[39] *Id.* Ley de la Junta de Libertad Bajo Palabra, Art. 3, 4 LPRA sec. 1503.
[40] *Id.*

El Artículo 3C aborda cuando es que una persona puede hacer una solicitud de privilegio de libertad bajo palabra:

> Una persona recluida en una institución carcelaria en Puerto Rico o en cualquier Programa de Desvío que cumpla con los requisitos establecidos por la Junta mediante reglamento o en esta ley, **que muestre un alto grado de rehabilitación y que no represente un riesgo a la sociedad, podrá solicitar formalmente el privilegio de libertad bajo palabra dentro de la jurisdicción de la Junta mediante los mecanismos que disponga la misma, igualmente mediante reglamento. La solicitud por parte de la persona recluida conllevará el consentimiento de ésta para que la Junta pueda revisar y obtener copia de todos los expedientes sobre dicha persona en poder de la Administración de Corrección, a fin de que pueda ser considerada para la concesión de los privilegios contemplados en esta Ley.** (Énfasis suplido). Recibida la solicitud, la Junta referirá la evaluación de la misma a uno de los paneles para el trámite y la adjudicación correspondiente.[41]

Es decir, la libertad bajo palabra es un privilegio, no un derecho, el cual se otorga en el mejor interés de la sociedad y cuando las circunstancias establezcan que propiciará la rehabilitación del confinado.[42] No obstante lo anterior, sumado a ello, la Junta posee la facultad de revocar este privilegio a cualquier liberado quién por su conducta no demuestre estar preparado aun para beneficiarse plenamente de dicho privilegio y el tratamiento que este implica; tomando en cuenta para esta determinación tanto la evaluación de la Administración del Departamento de Corrección, tal como el uso de su discreción.[43]

Ahora bien, para la Junta determinar la elegibilidad de la persona a programas de libertad bajo palabra, deberá tomar en consideración los siguientes criterios:

> (1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.
> (2) Las veces que el confinado haya sido convicto y sentenciado.
> (3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.

---

[41] *Id.*, Art. 3C, 4 LPRA sec. 1503c.
[42] *Lebrón Pérez v. Alcaide, Cárcel de Distrito*, 91 DPR 567, 573 (1964).
[43] *Id.* Ley de la Junta de Libertad Bajo Palabra, Art. 3B, 4 LPRA sec. 1503.

(4) **La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.**
(5) El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.
(6) La edad del confinado.
(7) El o los tratamientos para condiciones de salud que reciba el confinado.
(8) La opinión de la víctima.
(9) **Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.**
(10) **Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.**
(11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento. **La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho.**[44]

### C. Reglamento de la Junta de Libertad Bajo Palabra

El Artículo II del Reglamento de la Junta de Libertad Bajo Palabra explica que la Ley Núm. 118-1974 creó la Junta como un organismo administrativo con funciones cuasijudiciales, cuya finalidad es la rehabilitación de las personas convictas de delito.[45] Una de las formas que se utiliza para evaluar a la persona es un *Informe de Ajuste y Progreso* el cual es un estudio realizado por el técnico de servicio sociopenal en relación con la conducta observada por la persona mientras está confinada en la institución.[46] Dicho *Informe* incluye aspectos de trabajo o estudio, compensación, salud física o mental, adicción, tratamiento, entre otras.[47]

Respecto al referido de casos a la JLBP, el artículo IX sección 9.1 establece sobre la solicitud del privilegio que:

A. Se entenderá solicitado formalmente el privilegio de libertad bajo palabra mediante el recibo del referido que a tales efectos remita el Departamento de Corrección y

---

[44] *Id.*, Art. 3D, 4 LPRA sec. 1503d.
[45] Reglamento de la Junta de Libertad Bajo Palabra, Núm. 9232, Art. II, 18 de noviembre de 2020.
[46] *Id.*, Art. V.
[47] *Id.*

Rehabilitación o a solicitud por escrito del peticionario.[48]

[…]

A esos efectos, el Artículo X, sección 10.1, dispone los criterios de elegibilidad a ser considerados por la Junta:

1. Historial delictivo
   a. La totalidad del expediente penal.
   b. […]
   c. […]
   d. Naturaleza y circunstancias del delito, por el cual cumple sentencia, incluyendo el grado de fuerza o violencia utilizado en la comisión del delito.
   e. […]
   f. […]
   i. […]
2. Una relación de liquidación de la(s) sentencia(s) que cumple el peticionario.
3. **La clasificación de custodia, el tiempo que lleva endicha clasificación y si hubo cambio de clasificación y las razones para ello.**
   a. **La Junta no concederá libertad bajo palabra cuando el peticionario se encuentre en custodia máxima.**
4. La edad del peticionario.
5. […]
6. El historial social
   a. Se tomará en consideración la totalidad del expediente social.
   b. […]
   c. El historial de ajuste institucional y el historial social preparado por el Departamento de Corrección y Rehabilitación.
   d. […]
   e. **El historial de trabajo y/o estudio realizado en la institución.**
   f. […]
7. **Si cuenta con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia y amigo consejero.**
   a. El plan de salida podrá ser en Puerto Rico, en cualquier estado de los Estados Unidos o en cualquier otro país que tenga un tratado de reciprocidad con Estados Unidos.
   b. […]
   c. […]
   d. **Oferta de empleo** y/o estudio**.**
      i. Todo peticionario deberá proveer una oferta de empleo o; en la alternativa, un plan estudios adiestramiento vocacional o estudio y trabajo.
      ii. La oferta de empleo se presentará mediante carta suscrita por la persona que extiende la oferta de empleo al peticionario, incluyendo la siguiente información:
         (a) Nombre completo, dirección postal, física, electrónica y teléfono(s) de la persona que ofrece el empleo.

---

[48] *Id.*, Art. IX, Secc. 9.1.

> (b) Nombre dirección postal, física, electrónica y teléfono(s) y naturaleza dl negocio en el cual se ofrece el empleo.
>
> (c) Funciones que ejercerá el peticionario y el horario de trabajo.
>
> iii. [...]
>
> **iv. La falta de oferta de empleo o estudio no será razón suficiente para denegar el privilegio.**
>
> v. Se exime de presentar una oferta de empleo o estudios en aquellos casos en que el peticionario padezca de alguna incapacidad física, mental o emocional, debidamente diagnosticada y certificada por autoridad competente, o sea mayor de sesenta (60) años.
>
> e. Residencia
>
> **i. Todo peticionario tiene que indicar el lugar en el cual piensa residir de serle concedida la libertad bajo palabra, bien sea en una residencia o un programa interno.**
>
> **ii. De proponer una residencia, el peticionario proveerá el nombre completo, número de teléfono y correo electrónico de la persona con la cual residirá, o de algún familiar cercano, así como la dirección física de la residencia. En estos casos, se realizará una investigación sobre la actitud de la comunidad donde propone residir el peticionario, de serle concedida la libertad bajo palabra.**
>
> iii. [...]
>
> iv. [...]
>
> **v. Para determinar si la vivienda propuesta es viable, la Junta considerará:**
>
> > (a) Las características personales e historial delictivo de las personas con las cuales convivirá el peticionario en la vivienda, y como el peticionario se relaciona con estos.
> >
> > (b) Opinión de la comunidad sobre la determinación de conceder el privilegio y las personas con las cuales convivirá el peticionario.
> >
> > (c) Condición de la planta física de la residencia y cantidad de habitantes de la misma.
> >
> > (d) Si la residencia propuesta está relativamente cercana a la residencia de la víctima de delito.
> >
> > (e) Si existe algún impedimento en ley para que el peticionario resida en la vivienda propuesta, excepto se encuentre incluido en el contrato de vivienda o certificación de la administración correspondiente.
> >
> > (f) Cualquier otra consideración que la Junta estime pertinente dentro de los méritos del caso individual.
>
> **f. Amigo Consejero**
>
> i. El amigo consejero tiene la función de cooperar con la Junta y el Programa de Comunidad del Departamento de Corrección y Rehabilitación, en la rehabilitación del peticionario.
>
> **ii. Requisitos:**
>
> > (a) [...]
> >
> > (b) [...]
> >
> > (c) Tener la mayoría de edad.

(d) Ser residente de Puerto Rico. Puede residir en el área limítrofe al Programa de Comunidad con competencia. Debe tener contacto frecuente con el peticionario.

(e) Ser una persona de integridad moral.

(f) No tener antecedentes penales.

iii. Se realizará una investigación en la comunidad sobre la conducta e integridad moral de la persona propuesta para amigo consejero.

iv. No se requerirá cumplir con el requisito de amigo consejero en aquellos casos en que el plan de salida propuesto consista únicamente en ser ingresado a un programa de tratamiento interno.

v. **La falta de amigo consejero no será razón suficiente para denegar el privilegio.**

vi. No se requerirá el amigo consejero a peticionarios mayores de sesenta (60) años.

8. Historial de salud

a. [...]

b. Historial médico del peticionario.

c. Tratamientos para condiciones de salud que haya recibido o reciba el peticionario.

i. Estos tratamientos incluyen los relacionados al control de adicción a sustancias controladas y/o alcohol, control de agresividad, y cualquier otro tratamiento trazado por el Departamento de Corrección y Rehabilitación.

ii. [...]

iii. Se requerirá haber tomado y culminado en la institución el Programa de Aprendiendo a Vivir sin Violencia a los peticionarios que cumplan pena de reclusión por los siguientes delitos:

(a) Asesinato.

(b) [...]

iv. [...]

v. [...]

vi. [...]

9. [...]

10. [...]

11. [...]

12. **La Junta tendrá discreción para considerar los mencionados criterios según considere conveniente y cualquier otro meritorio con relación a la rehabilitación y al mejor interés de la sociedad.**[49] (Énfasis suplido).

Por último, el Artículo XIV, sección 14.1, menciona algunas disposiciones generales de las cuales destacamos: "A. La Junta tomará su determinación a base de preponderancia de la prueba, a la luz de la prueba presentada durante la vista y la totalidad del expediente del caso".[50]

---

[49] *Id.*, Art. X, Secc. 10.1.
[50] *Id.*, Art. XIV, Secc. 14.1.

A su vez, la Sección 12.3(b) del Reglamento 9232 dispone que, **cuando la Junta deniegue la solicitud, deberá expresar individualmente en su resolución las determinaciones de hecho y conclusiones de derecho que fundamentan la determinación tomada, indicando además la fecha en que volverá a considerar el caso,[51] ostentando discreción para considerar y evaluar los criterios según considere conveniente y meritorio.[52]** (Énfasis nuestro). Es imprescindible recalcar que, siendo la libertad bajo palabra un privilegio, el mismo descansa en la entera discreción del Estado, sin existir ningún derecho a obtener dicho beneficio.[53]

De otra parte, el Artículo III del Reglamento 9232 establece que, se adoptarán las disposiciones de la Ley Núm. 38-2017 intitulada como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, (LPAU) según enmendada, *et. seq.[54]*, respecto al proceso de adjudicación. En específico, la Sección 3.15 de la LPAU dispone que,

> la parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso.[55]

### III

El recurso de revisión ante nuestra consideración versa sobre la inconformidad del recurrente con el dictamen emitido por la JLBP en el cual le denegó el privilegio de libertad bajo palabra y dispuso un nuevo término y condiciones para considerar nuevamente su

---

[51] *Id.*, Art. XII, Secc. 12.3(B).
[52] *Id.*, Art. X, Secc. 10.1(B).
[53] *Maldonado Elías v. González Rivera*, 118 DPR 260, 275-276 (1987).
[54] 3 LPRA secc. 9601.
[55] 3 LPRA secc. 9655, Secc. 3.15.

caso. En el recurso, el recurrente esgrimió la comisión de cuatro (4) errores los cuales versan sobre su desacuerdo con la *Resolución* recurrida, así como su inconformidad tras la JLBP no haber atendido la solicitud de reconsideración instada. Por su parte, la recurrida argumenta que el peticionario no logró rebatir la presunción de legalidad y corrección que cobija la *Resolución* recurrida. Tras considerar que los errores pueden ser discutidos de forma conjunta, así obraremos.

Según el precitado derecho, los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[56] Por ello, el Tribunal Supremo de Puerto Rico ha establecido que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad.[57]

Ante la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[58] Para ello, deberá demostrar que existe otra prueba en el expediente, que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[59]

---

[56] *Rolón Martínez v. Caldero López, supra; Asoc. Fcias. v. Caribe Specialty et al. II.*, supra, 940.

[57] *Batista, Nobre v. Jta. Directores,* supra, 216, citando a *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 511-512 (2011); *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999).

[58] *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

[59] *Gutiérrez Vázquez v. Hernández*, 172 DPR 232, 245 (2007).

Cónsono con lo anterior, ante la ausencia de prueba que establezca que el foro recurrido actuó de forma arbitraria, ilegal, irrazonable o ausente de evidencia sustancial, estamos obligados a conceder la deferencia que merece la determinación de la JLBP en cuanto a denegar la concesión del privilegio de libertad bajo palabra al recurrente. Ello es así, pues es la JLBP quien tiene vasta experiencia y conocimiento especializado para determinar la concesión del privilegio solicitado conforme a lo que requiere nuestro estado de derecho.

De otra parte, el sistema de libertad bajo palabra permite que una persona que haya sido convicta y sentenciada a un término de cárcel cumpla la última parte de su sentencia fuera de la institución penal, sujeto al cumplimiento de las condiciones que se impongan para conceder la libertad.[60] Asimismo, tanto la JLBP como la jurisprudencia disponen que la libertad bajo palabra es un privilegio.[61] Así pues, la Junta posee la facultad de revocar este privilegio a cualquier liberado; tomando en consideración tanto la evaluación de la Administración del Departamento de Corrección, tal como el uso de su discreción.[62] Por último, el Reglamento 9232 de la JLBP expresamente establece que no concederá el privilegio de libertad bajo palabra cuando el peticionario se encuentre en custodia máxima.

Según establece el Reglamento 9232, para ser elegible al privilegio de libertad bajo palabra la persona debe contar con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia y amigo consejero. Respecto a la residencia, dispone que, todo peticionario tiene que indicar el lugar en el cual piensa residir. De proponer una residencia, el peticionario proveerá

---

[60] *Maldonado Elías v. González Rivera*, 118 DPR 260, 275 (1987).
[61] *Lebrón Pérez v. Alcaide, Cárcel de Distrito*, 91 DPR 567, 573 (1964).
[62] *Id.* Ley de la Junta de Libertad Bajo Palabra, Art 3B, 4 LPRA § 1503.

el nombre, número de teléfono y correo electrónico de la persona con la cual residirá, o de algún familiar cercano, así como la dirección física de la residencia. En estos casos, se realizará una investigación sobre la actitud de la comunidad donde propone residir el peticionario.

Nótese que, luego de realizar la investigación correspondiente, la JLBP determinó que la residencia en la que proponía vivir el recurrente no era viable. De igual forma, el Informe reveló que la comunidad y la ubicación del hogar propuesto en su plan de salida no resultaban viable para la rehabilitación del peticionario. Por su parte, el señor Torres Colón no presentó prueba que demostrase lo contrario. Es decir, el recurrente no demostró que la determinación de la JLBP fue arbitraria, ilegal o irrazonable. Por último, resaltamos que los únicos aspirantes descartados para solicitar el privilegio de libertad bajo palabra son aquellos que se encuentran en custodia máxima. No obstante, ello no implica que la JLBP automáticamente concederá dicho privilegio a los peticionarios de custodia mediana, sino que será uno de los criterios a considerar para determinar la elegibilidad de la persona al programa de libertad bajo palabra.

Puntualizamos que, en cuanto al cuarto señalamiento de error, el recurrente nos convidó a concluir que el DCR incidió al rechazar de plano su oportuna solicitud de reconsideración. No nos convence. Según el precitado derecho, el Artículo III del Reglamento 9232 establece que, se adoptarán las disposiciones de la LPAU en el proceso de adjudicación. Por su parte la LPAU dispone que, la parte adversamente afectada por una resolución podrá presentar una moción de reconsideración de dicha resolución. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente. Por tanto, no le asiste la razón al señor Torres

Colón, toda vez que la JLBP no estaba obligada a atender dicha moción de reconsideración.

En resumidas cuentas, colegimos que la determinación de la JLBP fue adecuada y correcta, por lo cual, los errores señalados por el señor Torres Colón no se cometieron. Es decir, luego de estudiar minuciosamente la totalidad del expediente ante nuestra consideración, incluyendo la copia certificada del expediente administrativo, concluimos que el recurrente no logró rebatir la presunción de corrección y legalidad de la *Resolución* recurrida, por lo que no atisbamos fundamento alguno para intervenir. Dado lo anterior, procede que confirmemos la misma.

**IV**

Por los fundamentos que anteceden, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones