Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| HÉCTOR RIVERA VEGA<br><br>Parte Recurrente<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Parte Recurrida | TA2025RA00292 | *Revisión Administrativa* procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm. 49671<br><br>Sobre: Denegación de Concesión de Libertad Bajo Palabra |

Panel integrado por su presidenta la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Rodríguez Flores, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 25 de noviembre de 2025.

Comparece ante nos el señor Héctor Rivera Vega (recurrente o señor Rivera Vega) mediante el recurso de epígrafe incoado el 17 de octubre de 2025.[1] Solicita que revoquemos la *Resolución* emitida el 13 de agosto de 2025, y notificada el 18 de agosto de 2025, por la Junta de Libertad Bajo Palabra (Junta).[2] Mediante el referido dictamen, la Junta denegó la concesión del privilegio de libertad bajo palabra al señor Rivera Vega.

La Junta, representada por la Oficina del Procurador General, compareció ante nos el 13 de noviembre de 2025, mediante *Escrito en Cumplimiento de Resolución.*[3]

Examinados los escritos y los documentos que conforman el apéndice, a la luz del derecho aplicable, *confirmamos* la *Resolución* recurrida.

---

[1] *Petición de Revisión Administrativa*, SUMAC TA en el recurso TA2025RA00292, entrada 1.
[2] *Resolución y Orden*, SUMAC TA, Apéndice del recurso, entrada 2.
[3] *Escrito en Cumplimiento de Orden,* SUMAC-TA en el recurso TA2025RA00292, entrada 3.

**I.**

Según surge del expediente, el señor Rivera Vega se encuentra recluido en la Institución Correccional 501 de Bayamón, cumpliendo una sentencia de ciento nueve (109) años y seis (6) meses por los delitos de asesinato en segundo grado, amenaza a testigos, restricción a la libertad, agresión agravada e infracción a la Ley de Armas. En la *Hoja de Control Sobre Liquidación de Sentencias* se expone que el recurrente cumplió con el mínimo de su sentencia y que este cumplirá, tentativamente, con el máximo el 31 de diciembre de 2098.[4] La Junta adquirió jurisdicción para considerar su caso el 23 de diciembre de 2021.

Luego de celebrada la vista de consideración, el 31 de agosto de 2022, la Junta emitió una *Resolución* posponiendo su determinación debido a que no contaba con la información necesaria para atender el caso.[5] Así, le solicitó al Departamento de Corrección y Rehabilitación que le remitiera la orden del tribunal que excluyó al señor Rivera Vega del programa Vivir Sin Violencia de la sección Programa de Evaluación y Asesoramiento por tener una sentencia señalándolo como delincuente habitual. Especificó además que el caso del señor Rivera Vega volvería a ser considerado al recibo de la información solicitada o en noviembre de 2022.

A tales efectos, el 24 de noviembre de 2022, y notificada el 19 de enero de 2023, la Junta emitió nuevamente una *Resolución* posponiendo su determinación por un término de noventa (90) días. Ello con el propósito de que el Departamento de Corrección y Rehabilitación presentara la información antes solicitada y, en consecuencia, estar en posición para evaluar el caso.[6]

---

[4] *Hoja de Control sobre Liquidación de Sentencia*, SUMAC TA, Apéndice del recurso, entrada 12.

[5] *Resolución*, SUMAC TA, Apéndice del recurso, entrada 3.

[6] *Resolución*, SUMAC TA, Apéndice del recurso, entrada 4.

Luego, el 19 de mayo de 2023, la Junta emitió una *Resolución* mediante la cual determinó no conceder el privilegio de libertad bajo palabra al señor Rivera Vega.[7] Para denegar el aludido privilegio, la Junta concluyó que, a pesar de que el recurrente cumplía con los criterios de plan de salida (residencia, amigo consejero y empleo), a éste se le había revocado la autorización de estar interno en el Hogar de Adaptación Social por haber cometido un nuevo delito. Así, la Junta dispuso que el caso volvería a ser considerado para el mes de abril de 2024, fecha en la cual el Departamento de Corrección y Rehabilitación debía someter un Informe de Ajuste y Progreso con el plan de salida debidamente corroborado, además de la orden del tribunal que excluyó al peticionario del programa Vivir Sin Violencia.

El 14 de junio de 2024, la Junta emitió una *Resolución Interlocutoria* ordenando al Departamento de Corrección y Rehabilitación que, dentro del plazo de sesenta (60) días, cumpliera con el mandato de ley y le remitiera los informes o expedientes sociales y penales anteriormente requeridos, con la información corroborada y con expresión de términos de sentencias actualizadas para poner en posición a la agencia de evaluar al señor Rivera Vega.[8]

Conforme a lo anterior, el Departamento de Corrección y Rehabilitación produjo los siguientes informes: *Informe de Evaluación Psicológica* de 30 de agosto de 2023[9]; *Informe de Ajuste y Progreso a la Junta de Libertad Bajo Palabra* de 18 de abril de 2024[10]; *Informe de Ajuste y Progreso a la Junta de Libertad Bajo Palabra* de 27 de junio de 2024[11]; *Acuerdos del Comité de Clasificación y Tratamiento* de 28 de junio de 2024[12]; *Informe Breve*

---

[7] *Resolución*, SUMAC TA, Apéndice del recurso, entrada 5.

[8] *Resolución Interlocutoria*, SUMAC TA, Apéndice del recurso, entrada 7.

[9] *Informe de evaluación psicológica*, SUMAC TA, Apéndice del recurso, entrada 8.

[10] *Informe de Ajuste y Progreso a la Junta de Libertad Bajo Palabra*, SUMAC TA, Apéndice del recurso, entrada 6.

[11] *Informe de Ajuste y Progreso a la Junta de Libertad Bajo Palabra*, SUMAC TA, Apéndice del recurso, entrada 9.

[12] *Acuerdos del Comité de Clasificación y Tratamiento*, SUMAC TA, Apéndice del recurso, entrada 10.

*de Libertad Bajo Palabra* de 12 de noviembre de 2024[13]; y la hoja de control sobre liquidación de sentencia[14].

Aun así, el 25 de septiembre de 2024, la Junta pospuso su determinación debido a que no contaba con el Informe breve de corroboración de plan de salida.[15] A esos efectos, concedió un plazo para que el Departamento de Corrección y Rehabilitación remitiera la información solicitada y dictaminó que el caso sería evaluado al recibo de la información solicitada o en diciembre de 2024.

Nuevamente, el 28 de enero de 2025, la Junta emitió una *Resolución* posponiendo evaluar el caso del señor Rivera Vega, por un término final de treinta (30) días, hasta contar con el informe breve de parte del Programa de Comunidad de Aibonito del Departamento de Corrección y Rehabilitación y el certificado de culminación del taller psico-educativo Aprendiendo a Vivir Sin Violencia.[16] Dispuso que el caso sería considerado al recibo de la información solicitada o en marzo de 2025.

Así las cosas, la Junta emitió una *Resolución* el 14 de julio de 2025, notificada el 13 de agosto de 2025. En ésta, formuló las siguientes determinaciones de hechos:

1. El peticionario cumple una sentencia de ciento nueve (109) años y seis (6) meses por asesinato en segundo grado, amenaza a testigos, restricción a la libertad, agresión agravada, e infracción a la Ley de Armas.

2. El peticionario extingue la totalidad de su sentencia, tentativamente, el 31 de diciembre de 2098.

3. El peticionario se encuentra clasificado en custodia mediana desde el 30 de junio de 2022, conforme se desprende de su expediente.

4. Al momento de la evaluación del expediente, surge que el peticionario no cuenta con casos ante los tribunales, denuncias o querellas institucionales.

---

[13] *Informe Breve de Libertad Bajo Palabra*, SUMAC TA, Apéndice del recurso, entrada 11.
[14] *Hoja de control sobre liquidación de sentencia*, SUMAC TA, Apéndice del recurso, entrada 12.
[15] *Resolución*, SUMAC TA, Apéndice del recurso, entrada 13.
[16] *Resolución*, SUMAC TA, Apéndice del recurso, entrada 15.

5. Como plan de salida en el área de vivienda el peticionario propuso residir con su madre, Ana Violeta Vega en la Urbanización Jardines de Santa Ana, Calle 5, J-5 en Coamo, Puerto Rico. Dicho plan de salida fue corroborado según surge del *Informe Breve de libertad bajo palabra* del 12 de noviembre de 2024, sin embargo la Junta entiende que dicho hogar no es viable.

6. En cuanto al amigo consejero el candidato lo es José I. Martínez, residente del Municipio de Coamo, Puerto Rico. Este fue corroborado por el DCR y resultó viable según surge del *Informe Breve de libertad bajo palabra* del 12 de noviembre de 2024.

7. En el área de empleo, el peticionario solo cuenta con una carta del Municipio de Coamo, donde expresa que dicho municipio podría evaluar al peticionario y considerarlo para una oportunidad de empleo.

8. El 6 de noviembre de 2023, al peticionario le fue realizada la muestra del ADN, conforme lo requiere la Ley Número 175 del 24 de julio de 1998, según enmendada.

9. El peticionario completó las terapias de Control de Impulsos el 21 de diciembre de 2023.

10. Aun cuando fue solicitada, del expediente no surge evidencia de que el peticionario completó el Programa de Tratamiento Psico-Educativo Aprendiendo a Vivir Sin Violencia.

11. El peticionario cuenta con Evaluación psicológica realizada por la Sección de Programas Evaluación y Asesoramiento (SPEA), con fecha del 30 de agosto de 2023.

12. El peticionario completó las *Terapias de Trastornos Adictivos* el 17 de agosto de 2023.

A la luz de las referidas determinaciones, la Junta concluyó lo siguiente:

En el caso que nos ocupa, como plan de salida en el área de vivienda el peticionario propuso residir con su madre, Ana Violeta Vega en la Urbanización Jardines de Santa Ana, Calle 5, J-5 en Coamo, Puerto Rico. Dicho plan de salida fue corroborado por el DCR según surge del *Informe Breve de libertad bajo palabra* del 12 de noviembre de 2024, sin embargo, la Junta entiende que dicho hogar no es viable. En el área de empleo, el peticionario solo cuenta con una carta del Municipio de Coamo, donde expresa que dicho municipio podría evaluar al peticionario y considerarlo para una oportunidad de empleo. Por último, aun cuando fue solicitada, del expediente no surge evidencia de que el peticionario completó el Programa de Tratamiento Psico-Educativo *Aprendiendo a Vivir Sin Violencia* el

cual es un requisito indispensable, dado los delitos por los cuales cumple sentencia el peticionario.

Cónsono con lo anterior, la Junta determinó que el señor Rivera Vega no cualificaba para beneficiarse del privilegio de libertad bajo palabra.[17]

En desacuerdo con la determinación de la Junta, el 8 de septiembre de 2025, el señor Rivera Vega presentó una *Moción de Reconsideración de Concesión de Libertad Bajo Palabra.*[18] En síntesis, alegó que los fundamentos aducidos por la Junta para denegar el privilegio de libertad bajo palabra eran incorrectos y no se sustentaban en la totalidad del expediente, pues los diversos informes demostraban que había cumplido con los criterios de elegibilidad al amparo del estado de derecho vigente. Asimismo, sostuvo que su plan de salida era el mismo que la Junta había reconocido previamente como viable.

El 25 de abril de 2023, la Junta emitió una *Resolución* en la que declaró No Ha Lugar la *Moción de Reconsideración* presentada por el señor Rivera Vega.[19]

Inconforme aun, el 17 de octubre de 2025, el señor Rivera Vega acudió ante este Tribunal de Apelaciones mediante *Petición de Revisión Administrativa* y señaló la comisión del siguiente error:

> La Junta de Libertad Bajo Palabra incurrió en un claro y patente abuso de discreción al denegar la concesión de libertad bajo palabra al aquí recurrente cuando dicha determinación no está fundamentada en evidencia alguna encontrada en el expediente del caso, constituyendo lo anterior una violación flagrante al debido proceso de ley.

Por su parte, en su *Escrito en Cumplimiento de Resolución,* la Oficina del Procurador General arguye que la decisión de la Junta de denegar al señor Rivera Vega el privilegio de libertad bajo palabra

---

[17] *Resolución*, SUMAC TA, Apéndice del recurso, entrada 18.
[18] *Moción de Reconsideración de Concesión de Libertad Bajo Palabra*, SUMAC TA, Apéndice del recurso, entrada 19.
[19] *Resolución y Orden*, SUMAC TA, Apéndice del recurso, entrada 2.

fue una razonable y sustentada por el expediente administrativo, por éste incumplir con el criterio de oferta de empleo y residencia.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones de los organismos administrativos. Ello, dado que las agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido encomendados.[20]

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[21]

En cuanto a las determinaciones de hecho que realiza una agencia, éstas serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo.[22] Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[23] Por lo tanto, la parte afectada por la decisión administrativa deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la

---

[20] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021), citando a *OCS v. Universal*, 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).
[21] *Transp. Sonell, LLC v. Jta. Subastas ACT*, 214 DPR 633 (2024); *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).
[22] Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675.
[23] *Rolón Martínez v. Superintendente*, 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Otero v. Toyota*, 163 DPR 716, 728-729 (2005).

actuación del ente administrativo no estuvo basada en evidencia sustancial.[24]

Ahora bien, respecto a las conclusiones de derecho de las decisiones de las agencias administrativas, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos por el tribunal.[25]

Al respecto, recientemente, en *Vázquez v. Consejo de Titulares*[26], el Tribunal Supremo hizo eco de la decisión del foro federal en el caso *Loper Bright Enterprises v. Raimondo*[27], y determinó que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. En *Vázquez,* el Tribunal Supremo enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, *supra.* Puntualizó que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. Con ello, nuestro Tribunal Supremo pautó el fin de la deferencia absoluta a las apreciaciones de derecho arribadas por las agencias administrativas.[28] En fin, delimitó que la interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. Ello, como mecanismo interpretativo del poder judicial.[29]

Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones

---

[24] *Otero v. Toyota*, supra, pág. 728.
[25] Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675.
[26] *Vázquez v. Consejo de Titulares*, 2025 TSPR 216, 216 DPR ___ (2025).
[27] *Loper Bright Enterprises v. Raimondo,* ___ U.S. ___, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024).
[28] *Vázquez v. Consejo de Titulares*, supra.
[29] *Íd.*

e interpretaciones de la agencia".[30] Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba.[31] Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa".[32]

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales.[33]

**B.**

La Ley Núm. 118 de 22 de julio de 1974, según enmendada, creó la Junta de Libertad Bajo Palabra, adscrita al Departamento de Corrección y Rehabilitación.[34] Entre los poderes conferidos a la Junta está la autoridad para "decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico".[35] De igual forma, en el uso de su discreción, la Junta tendrá facultad para revocar la libertad bajo

---

[30] *Otero v. Toyota*, supra, pág. 729.
[31] *Íd.*
[32] *Íd.*
[33] *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 744-745 (2012).
[34] 4 LPRA sec. 1501, *et seq.*
[35] Artículo 3 (a), 4 LPRA sec. 1503.

palabra a cualquier liberado que, por su conducta, revele no estar aún preparado para beneficiarse plenamente del privilegio y el tratamiento que implica la libertad bajo palabra.[36]

De esta forma, este organismo tiene la autoridad de conceder a cualquier persona recluida en una institución correccional de Puerto Rico el privilegio de cumplir la última parte de su condena en libertad bajo palabra.[37] Al conceder el privilegio, la Junta puede imponer las condiciones que estime necesarias.[38] Así, el liberado bajo palabra tiene una libertad cualificada.[39]

Cónsono con lo anterior, la Ley Núm. 85-2022 enmendó el Artículo 308 de la Ley Núm. 146-2012, conocida como el Código Penal de Puerto Rico[40], a los fines de disponer los criterios para cualificar para la Junta de Libertad Bajo Palabra. Surge de la *Exposición de Motivos* que su objetivo es "establecer una manera justa, retributiva y rehabilitadora, que le permita a aquella persona convicta por varios delitos el poder ser considerada para libertad bajo palabra al cumplir con los términos de la sentencia más onerosa relacionada directamente con alguno de los delitos por los cuales fue encontrado culpable".[41]

En cuanto a los criterios específicos que la Junta debe considerar al momento de considerar el privilegio, el Artículo 3-D de la Ley Núm. 118, establece los siguientes:

> (1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.
>
> (2) Las veces que el confinado haya sido convicto y sentenciado.
>
> (3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.

---

[36] Artículo 3 (b), 4 LPRA sec. 1503.
[37] *Benítez Nieves v. ELA et al.,* 202 DPR 818, 825 (2019).
[38] Art. 3, 4 LPRA sec. 1503.
[39] *Benítez Nieves v. ELA et al., supra,* pág. 825; *Maldonado Elías v. González Rivera,* 118 DPR 260, 266 (1987).
[40] 33 LPRA sec. 5416.
[41] Véase, Exposición de Motivos de la Ley Núm. 85-2022.

(4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.

(5) El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.

(6) La edad del confinado.

(7) El o los tratamientos para condiciones de salud que reciba el confinado.

(8) La opinión de la víctima.

(9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.

(10) Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.

(11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento.

La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho.

Además, el legislador hizo constar en el Artículo 5 de la Ley Núm. 118, *supra*, que la Junta tiene la autoridad de promulgar las reglas y reglamentos que crea convenientes para el mejor cumplimiento de las disposiciones de ese artículo.[42] En virtud de ello, el 25 de septiembre de 2024, la agencia aprobó el Reglamento Núm. 9603, mejor conocido como *Reglamento de la Junta de Libertad Bajo Palabra* (Reglamento Núm. 9603).

En lo pertinente, el Artículo X, Sección 10.1 del Reglamento Núm. 9603, establece los Criterios para Elegibilidad, a saber:

A. La Junta evaluará las solicitudes del privilegio, caso a caso, conforme al grado de rehabilitación y ajuste que presente el peticionario durante el término que ha estado en reclusión.

B. Al evaluar los casos, la Junta tomará en consideración los siguientes criterios con relación al peticionario:

[…]

---

[42] *Benítez Nieves v. ELA et al.*, supra, pág. 838.

8. Si cuenta con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia y amigo consejero.

    a. El plan de salida podrá ser en Puerto Rico, en cualquier estado de los Estados Unidos o en cualquier otro país que tenga un tratado de reciprocidad con Estados Unidos.

    b. [...]

    c. [...]

    d. Oferta de empleo y/o estudio.

        i. Todo peticionario deberá proveer una oferta de empleo o, en la alternativa, un plan de estudios adiestramiento vocacional, o estudio y trabajo.

        ii. La oferta de empleo se presentará mediante carta suscrita por la persona que extiende la oferta de empleo al peticionario, incluyendo la siguiente información:

            (a) Nombre completo, dirección postal, física, electrónica y teléfono(s) de la persona que ofrece el empleo.

            (b) Nombre, dirección postal, física, electrónica y teléfono(s) y naturaleza del negocio en el cual se ofrece el empleo.

            (c) Funciones que ejercerá el peticionario y el horario de trabajo.

        [...]

    e. Residencia

        i. Todo peticionario tiene que indicar el lugar en el cual piensa residir de serle concedida la libertad bajo palabra, bien sea en una residencia o un programa interno.

        ii. De proponer una residencia, el peticionario proveerá el nombre completo y número de teléfono de la persona con la cual residirá, o de algún familiar cercano, así como la dirección física de la residencia. En estos casos, se realizará una investigación sobre la actitud de la comunidad donde propone residir el peticionario, de serle concedida la libertad bajo palabra.

        iii. [...]

        iv. [...]

        v. Para determinar si la vivienda propuesta es viable, la Junta considerará:

            (a) Las características personales e historial delictivo de las personas con las cuales convivirá el peticionario en la vivienda, y cómo el peticionario se relaciona con estos.

(b) Opinión de la comunidad sobre la determinación de conceder el privilegio y las personas con las cuales convivirá el peticionario.

(c) Condición de la planta física de la residencia y cantidad de habitantes en esta.

(d) Si la residencia propuesta está a 30 millas de distancia en vehículo de la residencia de la parte perjudicada.

(e) Si existe algún impedimento en ley para que el peticionario resida en la vivienda propuesta.

(f) En los casos que aplique, si el peticionario se encuentra incluido en el contrato de vivienda o haya certificación de la administración correspondiente.

(g) Cualquier otra consideración que la Junta estime pertinente dentro de los méritos del caso individual.

[…]

En cuanto a la concesión o denegatoria del privilegio, la Sección 12.3 (B) del Reglamento dispone que, "[c]uando la Junta deniegue la libertad bajo palabra, expresará individualmente en su resolución las determinaciones de hecho y conclusiones de derecho que fundamentan dicha determinación, así la fecha (mes y año) en que volverá a considerar el caso."

Aun cuando la decisión de conceder o denegar los beneficios de libertad bajo palabra descansa en la entera discreción del Estado, y no existe un derecho a obtener tales beneficios, el procedimiento para su concesión debe cumplir con ciertas salvaguardas procesales.[43]

**III.**

En su único señalamiento de error, el recurrente solicita, en síntesis, que revoquemos la determinación de la Junta por no estar sostenida en evidencia sustancial que demuestre que incumplió con los requisitos requeridos por las leyes y los reglamentos. Aduce que

---

[43] *Maldonado Elías v. González Rivera*, supra, págs. 275-276.

la referida determinación es ilegal, irrazonable y violenta los parámetros establecidos en el Reglamento Núm. 9603 y su debido proceso de ley. Además, arguye que la Junta abusó de su discreción al denegar el privilegio y sustentar su determinación en que alegadamente no contaba con una propuesta viable de vivienda y oferta de empleo, cuando tal determinación no reflejaba la realidad del expediente.

De entrada, debemos señalar que no le asiste razón al recurrente en su planteamiento. Una lectura detenida de los documentos que obran en el expediente revela que, si bien el señor Rivera Vega reitera que su propuesta de vivienda era viable, lo cierto es que la determinación de la Junta en cuanto a la no viabilidad de la residencia quedó plenamente justificada en este. Nos explicamos.

Del *Informe Breve de Libertad Bajo Palabra*[44] de 12 de noviembre de 2024 se desprende que, el recurrente propuso residir con su madre, quien es una persona de edad avanzada, en el municipio de Coamo. A su vez, de este surge que los vecinos de la comunidad manifestaron tener conocimiento de que el señor Rivera Vega era una persona agresiva fuera de la comunidad y que, aunque no se oponían a que residiera allí, consideraban que su madre ya era una persona mayor de edad que no le podría ofrecer una supervisión efectiva. Asimismo, resulta que la viuda del occiso reside en la misma comunidad y que, a pesar de que tampoco se opuso a que se le concediera el privilegio, expresó que el recurrente era "problemático". A esos efectos, debemos recordar que el Reglamento Núm. 9603 le concede la facultad a la Junta para emitir su determinación considerando la "opinión de la comunidad sobre la determinación de conceder el privilegio y de las personas con las cuales convivirá el peticionario", así como sobre cualquier otra

---

[44] Véase, *Informe Breve de Libertad Bajo Palabra*, SUMAC TA, Apéndice del recurso, entrada 11.

consideración que estime pertinente. Así las cosas, nada en el expediente nos convence de que la propuesta de vivienda fuera una viable.

En cuanto al requisito de oferta de empleo, surge de expediente que el señor Rivera Vega solamente presentó una carta del Municipio de Coamo, en la que se expresa que el ayuntamiento podría evaluar al recurrente y considerarlo para una oportunidad de empleo. Sin embargo, según el expediente, la aludida carta no extiende una oferta de empleo al señor Rivera Vega y tampoco especifica las funciones que ejercerá ni el horario de trabajo; criterios necesarios para establecer el cumplimiento del candidato con el criterio de oferta de empleo.

En ese contexto, concluimos que la determinación recurrida se fundamentó en el expediente administrativo y constituyó una actuación razonable dentro de las prerrogativas de la agencia administrativa. El recurrente no demostró que la Junta actuó de forma irrazonable, caprichosa, ilegal o fuera del marco de los poderes delegados a ésta. Por lo que, concluimos que la determinación recurrida se fundamentó en el expediente administrativo y constituyó una actuación razonable de la agencia.

En vista de que la Junta actuó dentro de su discreción y conforme a los criterios que establece la ley y su reglamento, entendemos que no existen motivos suficientes para intervenir en su determinación de denegar el privilegio de libertad bajo palabra en este caso. Por tanto, resolvemos que la Junta actuó correctamente y conforme a la reglamentación aplicable al determinar que el señor Rivera Vega no cualificaba para beneficiarse del privilegio de libertad bajo palabra.

**IV.**

Por los fundamentos antes esbozados, confirmamos la *Resolución* recurrida.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones